

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-18-2002

# Gass v. VI Telephone Corp

Precedential or Non-Precedential: Precedential

Docket No. 01-2507

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Gass v. VI Telephone Corp" (2002). *2002 Decisions*. Paper 740.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/740

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 18, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2507

CHAD S. GASS,
        Appellant

v.

VIRGIN ISLANDS TELEPHONE CORPORATION,
RACO, INCORPORATED, and
ANN MARIE ESTES

On Appeal from the District Court of the Virgin Islands

District Court Judge: The Honorable Thomas K. Moore
(D.C. No. 97-cv-00184)

Argued on May 14, 2002

Before: AMBRO, FUENTES, and GARTH, Circuit Jud ges

(Opinion Filed: November 18, 2002)

        Thomas Alkon [Argued]
        Thomas H. Hart, III
        Alkon, Meaney & Hart
        2115 Queen Street
        Christiansted, St. Croix, VI 00820
         Attorney for Appellant,
        Chad S. Gass


        R. Eric Moore [Argued]
        Law Offices of R. Eric Moore
        Post Office Box 223086
        Downtown Station
        Christiansted, VI 00822-3086
        Attorney for Appellee
        Virgin Islands Telephone Corporation

        Daryl C. Barnes
        Carl A. Beckstedt, III [Argued]
        Bryant, Barnes & Moss, LLP
        1134 King Street, 2nd Floor
        Christiansted, VI 00820

        Kelly L. Faglioni
        W. Jeffrey Edwards
        Hunton & Williams
        951 East Byrd Street, 13th Floor
        Richmond, VA 23219
         Attorneys for Appellee

RACO, Incorporated

OPINION OF THE COURT

FUENTES, Circuit Judge:

As a result of the damage caused by Hurricane Marilyn, the Virgin Islands Telephone Company ("VITELCO") hired an independent contractor, RACO, to repair phone lines in the Virgin Islands. Chad Gass, a RACO employee, was repairing a phone cable and was seriously injured when a car drove over the cable he was holding. Gass filed this negligence action against RACO, VITELCO, and the driver of the car. The primary issue in this appeal is whether an employee of an independent contractor may sue the hirer of the contractor under the direct liability theories set forth in sections 410 and 414 of Chapter 15 of the Restatement (Second) of Torts (1965 & App. 1986) ("Restatement").

The District Court granted summary judgment to defendant VITELCO because it found that an injured employee of an independent contractor has no cause of action in tort against the employer of the contractor under

2

Restatement sections 410 and 414. The District Court granted summary judgment to defendant RACO because it held that RACO was shielded from liability by the exclusivity provision of the Virgin Islands Workmen's Compensation Act ("WCA"). The District Court denied summary judgment to defendant Ann Marie Estes.1 We will reverse the District Court's judgment with respect to VITELCO and affirm with respect to RACO.

I.

In September of 1995, Hurricane Marilyn struck the Virgin Islands, bringing down many VITELCO telephone lines on the islands of St. Thomas and St. John. In the following months, VITELCO hired contractors to assist in repairing the damaged telephone lines. These contractors included RACO, a construction firm based in North Carolina. RACO employed Chad Gass. VITELCO also hired Carnes, Burkett, Wiltsee & Associates, the engineering firm whose employee, Phillip Day, developed the blueprints and plans for the repair sites in the Virgin Islands.

On February 5, 1996, a RACO supervisor directed a RACO foreman, Jack Bryson, to take two linemen, Lee Fowler and Gass, from St. Thomas to St. John the next morning to repair telephone lines. Bryson complained to the RACO supervisor that three men were not sufficient to perform the job safely and that RACO's trucks lacked certain safety equipment, including road signs. The RACO supervisor instructed Bryson to proceed to St. John with the safety equipment to follow. Bryson had been assured that safety equipment, additional workers, and a cellular phone which he had requested would be available in a few

days.

The following morning, Bryson, Fowler, and Gass traveled to St. John. Bryson reported to Day, who provided the work blueprint for the job of stringing an aerial "slack span" cable between telephone poles on opposite sides of a road.

_____

1. Subsequent to the District Court's denial of her motion for summary judgment, Ms. Estes reached a settlement with Gass, and thus, is not a party to this appeal.

Day also showed the men where to get most of the materials for the job and led them to the job site. After Day left, the crew first "framed" a pole on the left side of the two-lane road, then parked the bucket truck in the right lane. The crew placed at least one of the bucket truck's two traffic cones at one end of the truck, and turned on the truck's flashing lights. They did not block traffic in the left lane, thus allowing vehicles from either direction to drive along one side of the truck. When the road was clear of traffic, Bryson laid a cable in front of the bucket truck across the road surface from one telephone pole to another. Bryson left some slack in the cable so that he could reach it from the bucket and motorists could drive over it safely. At approximately the same time, Bryson sent Fowler away from the work site to obtain the additional wire needed to complete the assignment.

Bryson then got in the bucket and instructed Gass to hand him the end of the cable when there were no vehicles approaching. After Gass handed the cable to Bryson, Estes drove her car over the cable. The cable wrapped around the rear axle of her car. As she continued driving forward, not realizing what had just occurred, the cable jerked out of Bryson's hands, coiled around Gass, and flung Gass into the air and across the bucket truck. Gass suffered serious injuries.

The workmen's compensation insurance provided by RACO covered Gass's medical expenses. In total, he recovered over $500,000 in workmen's compensation from RACO's insurer. On December 31, 1997, Gass filed the Complaint in this case, alleging that the negligent acts of Estes, VITELCO, and RACO caused his substantial injuries. Each of the defendants moved for summary judgment. On April 20, 2001, the District Court entered an order denying Estes' motion and granting the motions of VITELCO and RACO. On May 29, 2001, after Gass and Estes reached a settlement, the District Court ordered the case closed. Gass filed a timely appeal from the entry of summary judgment in favor of VITELCO and RACO.

II.

The District Court had diversity jurisdiction under 28 U.S.C. S 1332. We have jurisdiction over the District Court's

final order granting summary judgment to VITELCO and RACO pursuant to 28 U.S.C. S 1291.

The standard of review applicable to an order granting summary judgment is plenary. See Curley v. Klem , 298 F.3d 271, 276-77 (3d Cir. 2002). We apply the same test employed by a district court under Federal Rule of Civil Procedure 56(c). See Kelley v. TYK Refractories Co., 860 F.2d 1188, 1192 (3d Cir. 1988). Accordingly, the District Court's grant of summary judgment in favor of VITELCO and RACO was proper only if it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the evidence, we are required "to view [the] inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999) (citation omitted).

III.

The District Court granted summary judgment to VITELCO because it found that an injured employee of an independent contractor does not have a cause of action against the employer of the contractor under sections 410 or 414 of Chapter 15 of the Restatement. See Gass v. Virgin Islands Telephone Corp. et al., 149 F. Supp. 2d 205, 220 (D.V.I. 2001). The District Court based its conclusion on Monk v. Virgin Islands Water & Power Auth., 53 F.3d 1381 (3d Cir. 1995). In a subsequent opinion by the District Court of the Virgin Islands sitting as a three-judge appellate panel reviewing a Territorial Court decision, the panel explicitly rejected the District Court's interpretation of Monk in this case and held that an injured employee of an independent contractor does have a cause of action against the employer of the contractor under section 414. Figueroa v. HOVIC, 198 F. Supp. 2d 632 (D.V.I. 2002). 2 We must

_____

2. The District Judge in this case was also a member of the three-judge panel in Figueroa. He dissented from the majority opinion, confirming his view stated in Gass that section 414 does not permit a suit by an injured employee of an independent contractor against the contractor's employer.

decide here whether the District Court's view of section 410 and 414 hirer liability is correct.3 Chapter 15 of the Restatement, comprised of sections 409 through 429, covers the "Liability of an Employer of an Independent Contractor." Restatement div. 2, ch. 15, at 369. The first provision recites the general rule of non-liability of the employer of an independent contractor. RestatementS 409.4 The Restatement divides the exceptions to that general rule

into those based on an employer's direct negligence, see SS 410-15, and those involving vicarious liability imposed on the employer due to the negligence of the independent contractor, see SS 416-429. See Restatement ch. 15, topic 2, introductory note, at 394; Monk, 53 F.3d at 1389.

Gass argues that VITELCO is directly liable for its negligent acts under the sections 410 and 414.5 Gass's

_____

3. Although the Figueroa court only addressed section 414, we clarify that our analysis in this section applies to both sections 410 and 414. With respect to the issue presented in this case, there is no need to distinguish between the sections because they differ only in the degree of control exercised by the employer of the independent contractor. Under section 410, the employer must be alleged to have given orders or directions negligently, and under section 414, the employer must be alleged to have exercised his retained control negligently. Both sections deal with the direct liability imposed on the employer of the independent contractor for his own negligent acts. That commonality between the sections is at the core of this Court's analysis of the issue of the availability of employer liability.

4. Restatement S 409 states:

> Except as stated in SS 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.

5. Restatement S 410, "Contractor's Conduct in Obedience to Employer's Directions," provides:

> The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

Restatement S 414, "Negligence in Exercising Control Retained by Employer," provides:

6

theory is that VITELCO is liable under section 410, the negligent instruction section, because Phillip Day, acting as a representative of VITELCO, negligently gave the orders that caused RACO, through its supervisor, to commit the acts and omissions resulting in Gass's injuries. 6 Alternatively, Gass argues that VITELCO retained sufficient control over the performance of the job to render VITELCO liable under section 414, the negligent exercise of retained control section.

Rather than discussing the merits of Gass's claims, the District Court determined as a matter of law that Gass could not state a claim under either section 410 or 414 against VITELCO as the employer of the independent contractor. Gass, 149 F. Supp. 2d at 220. The District Court interpreted this Court's decision in Monk as dictating

this result. Id. at 219-20. The District Court's interpretation
of Monk, however, is incorrect.

To begin, the District Court's interpretation of Monk
conflicts with a prior decision of this Court. In Williams v.
Martin Marietta Alumina, Inc., 817 F.2d 1030, 1036-37 (3d
Cir. 1987), we determined that an employee of an
independent contractor may bring a claim against the
contractor's employer for harm caused by the employer's
own negligence under Restatement sections 410 or 414. We
did not indicate in Monk, nor have we indicated in any
other case, that we intended to overrule Williams. The
Williams decision, therefore, remains binding in this
Circuit. See Third Circuit Internal Operation Procedure

---

> One who entrusts work to an independent contractor, but who
> retains the control of any part of the work, is subject to liability for
> physical harm to others for whose safety the employer owes a duty
> to exercise reasonable care, which is caused by his failure to
> exercise his control with reasonable care.

6. The District Court assumed, without deciding the truth of Gass's
assertion, that Day was an agent and servant of VITELCO under the
Restatement and the doctrine of respondeat superior. This Court will
assume the same for purposes of resolving the issue on appeal, although
this material disputed fact is ultimately one for the jury to consider at
trial on remand.

VII(C) ("It is the tradition of this court that reported panel
opinions are binding on subsequent panels. Thus, no
subsequent panel overrules a published opinion of a
previous panel. Court en banc consideration is required to
overrule a published opinion of this court.") Thus, it is clear
that the Monk decision must be read in keeping with the
ruling in Williams.[7] The District Court did not interpret
Monk accordingly.

In Monk, the plaintiff, an employee of an independent
contractor who brought suit against the employer of the
contractor, asserted a claim under Restatement section
413, which involves an employer's "Duty to Provide for
Taking of Precautions Against Dangers Involved in Work
Entrusted to Contractor." 53 F.3d at 1389. We began our
discussion in Monk by pointing out that section 413 deals
with the "peculiar risk" doctrine, "which developed in the
latter half of the nineteenth century out of recognition that
'a landowner who chose to undertake inherently dangerous
activity on his land should not escape liability for injuries

---

7. VITELCO argues that this Court is not bound by the Williams decision
because it was based on cases dealing with Pennsylvania law rather than
Virgin Islands law. After concluding that the employer of an independent
contractor is liable to an employee of the contractor for harm caused by
its own instructions, the Williams court explained that we "have
previously stated that this section applies when an employee of the

independent contractor is injured," and cited to Draper v. Airco, Inc., 580 F.2d 91, 101-02 (3d Cir. 1978). 817 F.2d at 1037. In Draper, we held that the law of Pennsylvania allows employees of independent contractors to bring suit against employers of independent contractors under Restatement sections 410, 414, and 416. 580 F.2d at 101-02 (citing Byrd v. Merwin, 456 Pa. 516 (1974); Gonzalez v. United States Steel Corp., 248 Pa. Super. 95 (1977); Hargrove v. Frommeyer & Co., 229 Pa. Super. 298 (1974)).

VITELCO asserts that "an interpretation of the Restatement by one jurisdiction within this circuit does not compel the same interpretation for another such jurisdiction." Monk, 53 F.3d at 1392, n. 30. While that assertion is absolutely correct, it simply does not inform our reading of Williams because that case involved the interpretation of Virgin Islands law, not Pennsylvania law. In deciding the issue of Virgin Islands law in Williams, we referred to Pennsylvania law merely as persuasive authority. We are bound by the portion of the Williams decision interpreting Restatement sections 410 and 414, which comprises Virgin Islands law.

8

to others simply by hiring an independent contractor to do the work.' " Id. at 1390 (quoting Privette v. Superior Court, 5 Cal.4th 689 (1993)). The American Law Institute incorporated the doctrine in sections 413, 416, and 427 of Chapter 15 of the Restatement of Torts.8  The defendant in Monk, the employer of the independent contractor, urged this Court to consider whether the "others" protected under sections 413, 416, and 427 includes an independent contractor's employees. Id. at 1389. In resolving this issue, we set forth approvingly several reasons cited by other courts for denying employer liability to a contractor's employees under the "peculiar risk" sections. Id. at 1392-94. Based on these reasons, we concluded that an employee of an independent contractor is not one of the

_____

8. Section 413 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
>
> (a) fails to provide in the contract that the contractor shall take such precautions, or
>
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Section 416 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such

precautions in the contract or otherwise.

Section 427 provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

"others" allowed to bring suit against an employer of an independent contractor under the "peculiar risk" sections. Id. at 1393-94.

It is clear that we intended to limit the holding in Monk to sections 413, 416, and 427 given that we expressly limited the holding to "the peculiar risk provisions of Chapter 15 of the Restatement," and further clarified that the holding "extends to actions under the direct liability provision of section 413, as well as the vicarious liability provisions of sections 416 and 427." Id. We declined to rule that an employee of an independent contractor could never sue the employer of an independent contractor under any section of chapter 15. Instead, we carefully limited the reach of the Monk decision to the "peculiar risk" sections of Chapter 15. Therefore, the District Court's interpretation of Monk as prohibiting hirer liability under sections 410 and 414 can not be upheld on the basis of the plain language of the stated holding.

The District Court conceded as much, but interpreted Monk to have extended implicitly the reach of the holding to include sections 410 and 414. Gass, 149 F. Supp. 2d at 216-17, 220. The District Court based its interpretation in part on its assertion that the Monk court rejected the distinction between direct and vicarious liability, and in the process "implicitly rejected any limitation of its ruling to only those provisions involving a peculiar risk to others." Id. at 216-17.

We disagree with the District Court's assertion. The Monk court did not reject the overall division of direct and vicarious liability provisions in Chapter 15. Rather, the Monk court underscored the importance of the commonality of the "peculiar risk" doctrine in sections 413, 416, and 427, and thus concluded that the same policy considerations preclude hirer liability under those sections. Stated differently, the Monk court determined only that the "peculiar risk" doctrine differentiates sections 413, 416, and 427 from other sections in Chapter 15 for the purpose of determining the availability of hirer liability. The Court did not make a broader determination to eliminate the distinction between direct and vicarious liability set forth in Chapter 15 of the Restatement.

In fact, we find that there is good reason to distinguish between direct liability under sections 410 and 414 and "peculiar risk" liability under sections 413, 416, and 427 of the Restatement. Most importantly, the policy considerations underlying the "peculiar risk" sections of the Restatement differ from those underlying the other direct liability sections. The District Court of the Virgin Islands provided an excellent explanation of that difference in Figueroa:

> Peculiar risk analysis is conceptually distinct from traditional negligence analysis: while negligence and section 414 involve a failure to act with reasonable care, peculiar risk liability functions more as a strict liability principle resulting from a variety of policy considerations. Peculiar risk doctrine provides for liability even when a defendant is not personally negligent and does not cause an injury. Rather, the defendant's liability is derivative or vicarious of the acts of another, and is not related to any duty of his own. Thus, the doctrine allows courts to impose liability on landowners even when they utilized independent contractors to perform dangerous work and [does not allow that they] . . . limit their own liability by shifting the duty of care to another. In this way, the peculiar risk doctrine has helped to ensure that persons who were injured by dangerous [activities] have recourse, in the event that the independent contractor is insolvent. See Monk, 53 F.3d at 1390. Thus, in a sense, the courts have determined that landowners should be liable, even if the person who was actually negligent was beyond their control, i.e. an independent contractor; and, this is why the peculiar risk provisions, set forth in the Restatement, are utterly distinguishable from section 414.

> In contrast, . . . Section 414 provides for liability for an employer's own negligence where he retains sufficient control over the operative details of his work.

Figueroa, 198 F. Supp. 2d at 640 (emphasis supplied).[9]

_____

9. The Figueroa court is joined by several other courts in distinguishing between the "peculiar risk" sections and section 414. In Thompson v.

Because the holding in Monk stems from the unique policy considerations regarding the "peculiar risk" sections and because liability arises under section 414 as a result of different policy considerations, we see no reason to extend the prohibition in Monk to section 414.

Moreover, the peculiar risk sections interact differently with the workmen's compensation exclusivity provisions

than do sections 410 and 414. The peculiar risk sections address vicarious liability for the contractor's acts and omissions. Therefore, imposing liability against the independent contractor's employer for acts omitted or committed by the contractor, who is shielded from liability by the exclusivity provision of the WCA, conflicts with a major purpose of the WCA. Sections 410 and 414, on the other hand, address the direct liability of the contractor's employer for his own actions, and therefore do not conflict with the purpose of the exclusivity provision of the WCA. "The rule of workers' compensation exclusivity does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury, and when affirmative conduct by the hirer of a contractor is a proximate cause contributing to the injuries of an employee of a contractor, the employee should not be precluded from suing the hirer." Hooker v. Dep't of Transp. , 27 Cal. 4th 198, 214 (2002) (internal citation and quotations omitted).

Presenting a slightly different justification for extending Monk to include sections 410 and 414, the District Court opined that it "would make no sense whatsoever to preclude, under Monk, the injured employee from suing the negligent employer who has contracted out peculiarly dangerous work and failed to ensure that special precautions were taken (section 413), and yet to allow the employee to sue the negligent employer who has contracted out work that poses only ordinary risks of harm (sections 410 and 414). Accordingly, that sections 410 and 414 are

_____

Jess, 979 P.2d 322, 329-30 (Utah 1999), Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 454, n.3 (N. Dakota 1994), and Robinson v. Poured Walls of Iowa, Inc., 553 N.W.2d 873, 876-77 (Iowa 1996), the courts differentiated "peculiar risk" liability from section 414 liability for substantially similar reasons to those articulated by the Figueroa court.

12

premised on the employer's own negligence and involve no underlying peculiar risk of harm to others is no basis for imposing liability on the independent contractor's employer." Gass, 149 F. Supp. 2d at 218.

Even if the District Court's analysis were compelling, it cannot be reconciled with the law in the Virgin Islands.10 In the Virgin Islands, the various Restatements of law provide the rules of decision in the absence of local laws to the contrary. 1 V.I. Code Ann. S 4 (1967) ("V.I.C."); Williams, 817 F.2d at 1033. Regarding this issue, the Legislature of the Virgin Islands has decided that a contractor's employer can be liable to a subcontractor's employees. Figueroa, 198 F. Supp. 2d at 641; see 24 V.I.C. SS 263a, 284(b).11

At one time, the rule in the Virgin Islands was that the exclusivity of the worker's compensation remedy prohibited suit against a secondary employer. See Vanterpool v. Hess Oil Virgin Islands Corp., 766 F.2d 117 (3d Cir. 1985). The Legislature reacted to the Vanterpool decision by enacting

24 V.I.C. S 263a, which states in pertinent part:

> It shall not be a defense to any action brought by or on
> behalf of an employee, that the employee at the time of
> his injury or death, was the borrowed, loaned, or
> rented employee of another employer.

Thus, the Legislature abolished the borrowed servant

_____

10. We note that we do not find the District Court's reasoning in this
regard to be persuasive. In fact, it would make little sense, as apparently
the Virgin Islands Legislature has concluded, see infra, to shield a
contractor's employer from liability when the employer's own conduct
caused the employee's injury. Such a rule would unfairly allocate liability
and conflict with well-established common law.

11. VITELCO urges this Court not to consider Gass's argument with
respect the amendments to the Virgin Islands code as they relate to the
issue of hirer liability under sections 410 and 414 because it was not
presented to the District Court. While Gass did not make this specific
argument to the District Court, he did argue that hirer liability is
available to a contractor's employee under sections 410 and 414. We find
that the changes to the law found in 24 V.I.C. SS 263a, 284(b) inform our
analysis of sections 410 and 414. VITELCO had ample opportunity to
respond to this argument in its reply brief on appeal. We will, therefore,
consider the argument.

13

doctrine and clarified that an employer of an independent
contractor is not immune from suit simply because the
contractor is protected by the exclusivity provision of the
WCA. To further clarify its position with respect to this
issue, the Legislature amended the exclusive remedy
provision of the WCA to state:

> For purposes of this section, a contractor shall be
> deemed the employer of a subcontractor's employees
> only if the subcontractor fails to comply with the
> provisions of this chapter with respect to being an
> insured employer. The "statutory employer and
> borrowed servant" doctrine are not recognized in this
> jurisdiction, and an injured employee may sue any
> person responsible for his injuries other than the
> employer named in a certificate of insurance issued
> under section 272 of this title.

24 V.I.C. S 284(b) (emphasis added). Therefore, the
Legislature has made clear that "an employee of a
subcontractor can sue the subcontractor's employer unless
the subcontractor is not, itself, insured." Figueroa, 198 F.
Supp. 2d at 642.

If there were any doubt as to the proper interpretation of
Section 284(b), the Official Note attached to the bill removes
it. The explanation attached to the bill provides in relevant
part:

> This bill is needed to assist person [sic] who are injured while on the job . . . This need arises because the courts have been interpreting Section 284 of Title 24 of the Workmen's Compensation Act to grant immunity not only to a worker's immediate employer, but also to secondary employers although the Legislature never intended immunity for these secondary wrongdoers.
>
> * * *
>
> Take a situation where a [contractor's] employee is injured at Hess. Under the present law, the Courts say our Legislature intended not only to grant immunity to the injured worker's employer . . . , but also to Hess. The Bill would avoid that. . . . [I]f the[contractor's] employee is badly hurt as a result of the negligence of

14

> Hess, and the employee has collected . . . workmen's compensation benefits, . . . he can sue Hess.

Bill No. 498, 16th Legislature (1986) (attached explanation).

These legislative enactments comprise local laws, which preclude reliance on contrary interpretations of the Restatement. See 1 V.I.C. S 4 (1967). They also provide a clear statement of the public policy of the Virgin Islands. Therefore, we agree with the Figueroa court that "an injured employee of an independent contractor may sue the employer of the independent contractor under the provisions of section 414 [and section 410], if that employer is not named in the worker's compensation certificate, and [the employer's] negligent conduct caused the employee's injuries." 198 F. Supp. 2d at 643; 24 V.I.C.SS 263a, 284(b).

We find that the District Court erred in determining that Gass could not, as a matter of law, state a claim against VITELCO under sections 410 and 414 because such a conclusion contradicts our holding in Williams , misinterprets our decision in Monk, and ignores sections 263a and 284 of the Virgin Islands Code. Accordingly, Gass may sue VITELCO under sections 410 and 414 for VITELCO's liability for its own negligence.

IV.

The District Court granted summary judgment to RACO because, under Virgin Islands law, an injured employee who receives proceeds from workmen's compensation insurance paid for by his employer cannot sue that employer for negligent infliction of personal injuries. See Gass, 149 F. Supp. 2d at 211. The District Court determined that the WCA has been construed to allow employees to sue their employers when there is an allegation that the employer committed a tortious act with an actual, specific, and deliberate intent to injure, but that Gass had adduced no evidence to show that RACO intentionally injured him. Id.

Gass does not contest the District Court's conclusion that, under the WCA, employers who pay for workmen's compensation insurance are immune from negligence suits

15

by employees who receive insurance workmen's compensation payments. He also does not renew his argument that RACO committed an intentional tort against him. Instead, Gass argues on appeal that RACO was not an insured employer under the WCA, and therefore is not entitled to protection under the exclusivity provision. He urges this Court to consider this issue despite the fact that it was not argued below.

However, "[i]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument." Medical Protective Co. v. Watkins , 198 F.3d 100, 105-06 n.3 (3d Cir. 1999) (citation omitted); see also Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). This rule "applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record." In re American Biomaterials Corp., 954 F.2d 919, 927-28 (3d Cir. 1992). We only depart from this rule when "manifest injustice would result" from a failure to consider a novel issue. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115 (3d Cir. 1993); see also Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976) (citing Hormel v. Helvering, 312 U.S. 552 (1940)).

This case does not present an exceptional circumstance warranting the review of an issue for the first time on appeal. First, no "manifest injustice" will result from this Court refusing to hear this issue for the first time on appeal because Gass will not be left without coverage for his injuries. Gass has received over $500,000 in workmen's compensation from North Carolina. Over half of that amount was for medical treatment. Under the WCA, Gass would only have been eligible to receive $75,000 for medical treatment. See 24 V.I.C. S 254a(f). Second, timely raising of this issue below would have allowed the parties to develop the record more fully. Because Gass raised the issue of RACO's alleged failure to pay premiums to the Government Insurance Fund as required by the WCA for the first time on appeal, RACO was forced to submit a supplemental appendix containing apparently new documents to this Court. For these reasons, we will not take this opportunity to depart from our general rule of not considering issues

16

raised for the first time on appeal. Accordingly, we will affirm the District Court's decision with respect to RACO.

V.

For the aforementioned reasons, we will AFFIRM the
grant of summary judgment to RACO, but REVERSE the
grant of summary judgment to VITELCO and REMAND to
the District Court for trial of the claims against VITELCO
under Restatement sections 410 and 414, in accordance
with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17