NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2912
_____

MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC.

v.

ARTHUR KUPPERMAN;
PGB INTERNATIONAL, LLC and JP MORGAN CHASE BANK, N.A.

JP Morgan Chase Bank, N.A.,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-06-cv-04802)
District Judge:  Honorable Dennis M. Cavanaugh
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2011

Before:  FUENTES, FISHER and NYGAARD, *Circuit Judges*.

(Filed: August 3, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This case concerns the priority of  Merrill Lynch Business Financial Services,

Inc.'s ("Merrill") and JPMorgan Chase Bank, N.A.'s ("Chase") competing security

interests in the assets of PGB International, LLC ("PGB"). Chase claims that the District Court erred in granting summary judgment for Merrill. For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 2002, PITTRA G.B. International, Inc. ("PITTRA") granted Merrill a security interest in all of its current and future assets to secure a series of loans. The security agreement indicated that Merrill's security interest is binding upon PITTRA's successors and assigns. (App. at 656, 662.) Merrill filed a financing statement to perfect the security interest.

Arthur Kupperman, PITTRA's secretary and treasurer as well as a director and shareholder, created PGB in 2003 and transferred a substantial amount of PITTRA's assets to PGB. PGB operated the same type of business as PITTRA, used the same address, and had the same principals and employees. PITTRA did not inform Merrill of the asset transfer, of the organizational change, or of its ultimate demise. In fact, Kupperman continued to request increases in PITTRA's line of credit, providing Merrill with false financial statements. Unaware of the transfer of assets, Merrill did not file a new financing statement naming PGB as its debtor. Chase made a series of loans to PGB

2

beginning in 2004, and PGB granted Chase a security interest in all of its current and future assets. Chase filed a financing statement to perfect the security interest.

In 2006, PITTRA filed for bankruptcy under 7 U.S.C. § 11 in the United States Bankruptcy Court for the District of New Jersey. PITTRA's trustee then filed an adversary proceeding asserting claims alleging fraud and other causes of action related to the asset transfer between PITTRA and PGB. PITTRA's trustee also filed an adversary proceeding against Merrill seeking to avoid payments received. Both proceedings were eventually settled, and the court dismissed them with prejudice. As part of the agreement, Merrill waived all claims against PITTRA but specifically exempted claims against Kupperman and PGB.

Merrill then filed suit in the United States District Court for the District of New Jersey against PGB and others asserting claims arising from the secured loans made by Merrill to PITTRA. Merrill asserted priority over any and all other creditors of PGB, naming Chase as a defendant. In response, Chase asserted a first priority security interest in PGB's assets and brought a cross claim stating that it was entitled to foreclose its security interest against PGB's assets and seeking monetary damages against PGB and other individuals. Both Merrill and Chase moved for summary judgment, and the District Court granted Merrill's motion. Chase timely appealed.

## II.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a district court's grant of summary judgment and apply the same standard.  *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. 1997).  Summary judgment is appropriate where there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  "[W]e view the record and draw inferences in a light most favorable to the non-moving party."  *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).

## III.

Chase first argues that Merrill lacks standing to bring a claim against PGB for fraudulent transfer because such a claim belongs to the trustee of PITTRA in the bankruptcy proceedings.  *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568-69 (3d Cir. 2009).  We disagree.  As the District Court noted, the trustee "stipulated to dismissal of the fraudulent conveyance claim against PGB."  *Merrill Lynch Bus. Fin. Servs., Inc., v. Kupperman*, 2010 WL 2179181, at *18 (D.N.J. May 28, 2010).  The PITTRA bankruptcy does not impede Merrill's ability to challenge the validity of the asset transfer to PGB, and the settlement agreement between the PITTRA trustee and Merrill made clear that the releases excluded claims that Merrill could bring against PGB.  (App. at 440.)  Thus, Merrill is not precluded from pursuing its claim.

4

Chase next challenges the District Court's finding that PGB is PITTRA's successor. It is undisputed that PITTRA and PGB were both importers of industrial foods, they were located at the same address, they were operated by the same principals, and there was a transfer of assets from PITTRA to PGB. *See Kupperman*, 2010 WL 2179181, at *22. Based on these undisputed facts, we conclude that PGB is PITTRA's successor. *See Marshak v. Treadwell*, 595 F.3d 478, 490 (3d Cir 2009) (noting that "continuity of ownership; continuity of management; continuity of physical location, assets and general business operations; and cessation of the prior business shortly after the new entity is formed" determine successor liability). The security agreement between Merrill and PITTRA is binding upon PITTRA's successors and assigns. (App. at 656, 662.) Thus, the security agreement is enforceable against PGB.

Chase also challenges the District Court's finding that the transfer of assets from PITTRA to PGB was fraudulent under New Jersey law. *See* Uniform Fraudulent Transfer Act, N.J. Stat. § 25:2-20, *et seq.* We agree with the District Court's determination that Merrill can "unambiguously demonstrate" several of the "badges of

fraud."[1] *Kupperman*, 2010 WL 2179181, at *25. PITTRA and PGB shared the same ownership and management. Hence, the first badge of fraud was met in that the transfer of property was between insiders, as was the second badge because the debtor retained possession and control of the transferred assets. The transfer was also concealed from Merrill in direct contravention of the loan agreement, and the insiders concealed assets from Merrill, repeatedly submitting false statements to cover up fraudulent conduct. PITTRA ceased operations shortly after the transfer and eventually declared bankruptcy. Finally, PGB depleted PITTRA of its customers, employees, facility, and equipment. These circumstances demonstrate a "confluence of several [badges of fraud] in one transaction," which "generally provides conclusive evidence of an actual intent to defraud." *Gilchinsky v. Nat'l Westminster Bank N.J.*, 732 A.2d 482, 490 (N.J. 1999).

Chase contends that PGB's accounts receivable are not subject to Merrill's security interest. However, the definition of collateral in the security agreement includes "hereafter acquired or arising" assets. *Kupperman*, 2010 WL 2179181, at *21. Because the security agreement explicitly covers future collateral, Merrill's claim on PGB's assets

---

[1] The "badges of fraud" include: (1) the transfer was to an insider; (2) the debtor retained control of the transferred property thereafter; (3) the transfer was concealed; (4) the debtor had been sued or threatened with suit prior to the transfer; (5) substantially all of the debtor's assets were transferred; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the debtor did not receive consideration reasonably equivalent in value to the assets transferred; (9) the debtor was insolvent or became insolvent shortly thereafter; (10) the transfer occurred shortly before or after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 732 A.2d 482, 489 (N.J. 1999) (citing N.J. Stat. § 25:2-26).

is not limited to the specific assets transferred from PITTRA to PGB. *See* N.J. Stat. § 12A:9-507.

Chase next claims that Merrill's security interest is subordinate to Chase's. We disagree. Because PGB acquired the collateral subject to Merrill's security interest, because Merrill perfected its security interest in those assets, and because there was no period when the security interest was unperfected, Chase's security interest, created later in time, is subordinate to Merrill's security interest. N.J. Stat. §§ 12A:9-322(a)(1), 325.

Chase contends, however, that Merrill's security interest is in "collateral in which a new debtor has or acquires rights" and is thus governed by N.J. Stat. § 12A:9-326 and N.J. Stat. § 12A:9-508. Chase waived this argument by failing to raise it before the District Court. "[I]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument." *Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002) (internal quotation marks and citation omitted). We only depart from this rule when we find that a "manifest injustice" would result from failure to consider this novel issue. *Id.* In this case, no manifest injustice would result.[2]

---

[2] Even assuming that this claim was properly raised, New Jersey law does not compel a contrary conclusion. Under N.J. Stat. § 12A:9-326(a), a perfected security interest that is effective solely under N.J. Stat. § 12A:9-508 is subordinate to a perfected security interest that is effective by means other than solely under N.J. Stat. § 12A:9-508. However, Comment 2 of § 12A:9-326 explains that "a filed financing statement that is effective solely under Section 9-508" does not "encompass a financing statement filed against the original debtor which remains effective against collateral transferred by the original debtor to the new debtor." As described above, N.J. Stat. § 12A:9-507 applies to the assets transferred from PITTRA to PGB. Thus, Merrill has priority of interest.

Merrill's security interest encompasses hereafter acquired assets, which are included in the security agreement's definition of collateral. PGB, a mere continuation of PITTRA, secretly evaded its obligations to Merrill utilizing fraudulently acquired assets. Under these circumstances, PGB should not be treated as a standard "new debtor." In sum, PITTRA's unilateral, unlawful actions do not diminish Merrill's perfected security interest in the current and future collateral of PITTRA and its successors. The District Court was correct in ruling that Merrill is entitled to judgment as a matter of law.

## IV.

In view of the foregoing, we will affirm the order of the District Court.