NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2385
_____

MARTIN BRESLIN,
Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 11-cv-00261
(Honorable Susan D. Wigenton)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 7, 2013

Before:  SCIRICA, AMBRO and FUENTES, *Circuit Judges*.

(Opinion Filed:  January 9, 2013)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Martin Breslin appeals the District Court's order affirming the Social Security

Administration's final decision denying Breslin supplemental security income. Because

substantial evidence supported the Administrative Law Judge's finding Breslin was not

disabled under Social Security Act § 1614(a)(3), 42 U.S.C. § 1382c(a)(3), we will affirm.

I.

Breslin was born in 1961, and was 48 years old on the date of the ALJ decision. He attended college for two or three years. In the fifteen years before the ALJ decision,[1] he worked as a film expediter for NBC Universal from 1993 to 1995 and in a warehouse of AQL Decorating Service in 1998. Both jobs required lifting as much as 50 pounds. He has not worked since 1998. At the hearing before the ALJ, Breslin testified he was fired from the NBC and AQL jobs because "I had an alcohol problem."

On December 25, 2003, Breslin was admitted to Palisades Medical Center for alcohol intoxication and cardiopulmonary arrest after drinking beer without any meals for three weeks. During his hospitalization, Breslin was diagnosed with congestive heart failure, among other conditions, and was prescribed various medications. He was discharged on February 4, 2004, in good condition. Breslin testified he had not "had a drop" of alcohol since his admission to the hospital.

Dr. Ashraf Faltas conducted a consultative examination of Breslin on March 20, 2007. Dr. Faltas found atrial fibrillation alternating with atrial flutter (irregular heartbeats)[2] and concluded "This is a 46-year-old male with chronic alcohol consumption and was diagnosed with . . . cardiomyopathy anterior chest and cardiac arrhythmia as a result of heavy alcohol use. Physical examination is completely unremarkable." Dr. Faltas found no support for Breslin's claim of poor circulation and noted Breslin

---

[1] The Social Security Administration only considers substantial gainful activity performed in the previous fifteen years "past relevant work" for purposes of determining if a person is disabled under the Social Security Act. 20 C.F.R. § 416.920(b).

[2] *Atrial fibrillation or flutter*, U.S. NATIONAL LIBRARY OF MEDICINE, MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus/ency/article/000184.htm.

"[a]dmits to drinking 1 pint of alcohol and a six pack of beer every day." On January 30, 2008, Dr. Faltas conducted a reevaluation of Breslin with the same results except that Breslin's atrial fibrillation also alternated with sinus arrhythmia (a normal variation in heartbeats)[3] and Breslin stated he had "quit smoking and drinking alcohol since the last visit."

In the hearing before the ALJ, Breslin testified he had poor circulation in his legs, got fatigued easily, and felt lightheaded when he bent over repeatedly. When he sat for more than ten minutes, he lost feeling in his legs and he needed to get up, stretch, and change positions. Because his legs sometimes jerked and spasmed, his doctor directed him not to drive, a direction he had followed since 1990. He had trouble staying balanced, so he avoided public transportation and the crowds on it. He could walk six city blocks before stopping, stand for up to 20 minutes, and carry up to 35 pounds across a room. Sometimes in the mornings, his legs felt heavy and he needed to do knee stretches before he could get out of bed. He could climb the seven steps to his mother's house, where he lived. He helped his mother with chores, such as dusting, carrying laundry, and food shopping. He had not had his medications changed to treat his conditions.

The ALJ found Breslin had one severe impairment, chronic heart failure, that was not of listing severity. The ALJ found Breslin's symptoms limited him to light or sedentary work, but did not find credible Breslin's contentions of additional limitations. Finding jobs existed that Breslin could perform, the ALJ concluded Breslin was not

---

[3] *Sinus Arrhythmia*, BETTER MEDICINE, http://www.localhealth.com/article/sinus-arrhythmia.

disabled under the Social Security Act and accordingly not entitled to SSI. The ALJ's

denial became the agency's final decision when the Social Security Administration

Appeals Council denied Breslin's request for review. Breslin then sued in District Court

to review the agency's final decision. The District Court held the agency's decision was

supported by substantial evidence and affirmed. Breslin appeals the District Court's

decision, contending he had impairments in addition to those the ALJ found, the ALJ was

incorrect to find his statements about his limitations not credible, and the ALJ did not

properly assess whether jobs existed that Breslin could perform.

II.

The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction

under 28 U.S.C. § 1291. "We review the Agency's factual findings only to determine

whether the administrative record contains substantial evidence supporting the findings."

*Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). "Our review of legal issues is

plenary." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

To determine if Breslin was entitled to SSI, the ALJ properly followed the Social

Security Administration's five-step process for evaluating whether a claimant is disabled:

> First, the Commissioner considers whether the claimant is currently engaged in
> substantial gainful activity. If he is not, then the Commissioner considers in the
> second step whether the claimant has a 'severe impairment' that significantly
> limits his physical or mental ability to perform basic work activities. If the
> claimant suffers a severe impairment, the third inquiry is whether, based on the
> medical evidence, the impairment meets the criteria of an impairment listed in the
> 'listing of impairments,' 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which result in
> a presumption of disability, or whether the claimant retains the capacity to work. If
> the impairment does not meet the criteria for a listed impairment, then the
> Commissioner assesses in the fourth step whether, despite the severe impairment,
> the claimant has the residual functional capacity to perform his past work. If the

4

claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform. The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step.

*Allen*, 417 F.3d at 401 n.2 (quoting *Sykes*, 228 F.3d at 262-63). Breslin does not challenge the ALJ's findings at step one or four.

At step two, the ALJ found Breslin had one severe impairment: chronic heart failure. The ALJ found Breslin's other heart-related abnormalities – atrial fibrillation, atrial flutter, sinus arrhythmia, and "an unidentified abnormality seen on a chest x[-]ray" – either did not meet the 12-month duration requirement for severity, under 20 C.F.R. § 416.909, or were no longer affecting him. The ALJ found Breslin's "allegations of bad circulation in his legs and a myocardial infarction are not supported by the evidence."[4] Breslin contends, for the first time on appeal, the ALJ was incorrect to find the following impairments not severe: "cardiomyopathy, congestive heart failure, easy fatiguability, shortness of breath, chronic arrhythmia, vertigo, difficulty sleeping due to poor circulation, hypertension[], [and] atrial fibrillation alternating with atrial flutter." Since Breslin did not raise this issue before the District Court, it is waived on appeal. *Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002). The only exception to waiver is "when manifest injustice would result from a failure to consider a novel issue." *Id.* (internal quotation marks omitted). This exceptional circumstance is not present here because Breslin "offers no explanation for his failure to raise [the issue] in the district

---

[4] A myocardial infarction is a heart attack. *Heart attack*, U.S. NATIONAL LIBRARY OF MEDICINE, PUBMED HEALTH, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001246/.

5

court, and we are not aware of any obstacles that prevented him from doing so." *Altman v. Altman*, 653 F.2d 755, 758 (3d Cir. 1981).[5]

At step three, the ALJ found Breslin's severe impairment did not meet or equal listing 4.02, for chronic heart failure, in the listing of impairments. Breslin contends, for the first time on appeal, "the ALJ never discussed Listing 4.05 pertaining to Appellant's atrial fibrillations." This issue is waived because Breslin did not raise it before the District Court. *Gass*, 311 F.3d at 246.[6]

Before proceeding to steps four and five, the ALJ assessed Breslin's residual functional capacity, which is "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). The assessment determines all of a claimant's limitations resulting from medically determinable impairments and self-reported symptoms those impairments "could reasonably be expected to produce." SSR 96-7p; 20 C.F.R. § 416.945(a). Symptoms are found to cause limitations if those limitations are either "substantiated by objective medical evidence" or the ALJ finds the claimant's statements about them credible. SSR 96-7p. A credibility determination must be based on the entire

---

[5] Even if we were to reach the merits, we would affirm. Breslin's only support for his contention the impairments he names were severe is the medication he was prescribed and the doctor's order he contends he received not to drive. An impairment is severe only if it "significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 416.920(c), as determined only by "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Breslin provides no medical evidence he had any impairments other than chronic heart failure that significantly limited his ability to do basic work activities.

[6] Even if we were to reach the merits, we would affirm because Breslin provides no factual basis for finding his impairment met or equaled listing 4.05. Cardiac syncope (loss of consciousness) or near syncope (altered consciousness) is necessary to meet listing 4.05, 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00(F)(3), and Breslin does not contend he suffered either.

6

case record and "contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.*

The ALJ found an assessment of Breslin's residual functional capacity conducted by a state agency consultant was consistent with the medical evidence, and to the extent Breslin's contentions about his limitations were inconsistent with the assessment, those contentions were not credible. The assessment found Breslin was "capable of light work, except that he can stand/walk only two hours out of an eight hour workday, must avoid concentrated exposure to hazards such as heights and machinery, and is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, and cannot climb ladders, ropes, or scaffolds." The ALJ found Breslin's contentions he had other limitations not credible because Breslin's erratic work history "suggest[ed] a lack of motivation to work," no medical evidence supported Breslin's contentions he had poor circulation and a heart attack, and "[m]ost significantly, he has been inconsistent in describing his drinking." Specifically, in his first consultative examination with Dr. Faltas in 2007, Breslin said he drank a pint of alcohol and six pack of beer daily, but he testified in the hearing that he had not drunk alcohol since his 2003 hospitalization.

Breslin contends the ALJ's credibility determination was unsupported.[7] Breslin contends Dr. Faltas's report does not make clear whether his drinking was still ongoing at the time of the examination. The report stated "[t]he patient is a smoker. Admits to

---

[7] Breslin says there is no medical evidence he is not credible. This contention misunderstands whose role it is to determine credibility: it is the ALJ's. SSR 96-7p.

drinking 1 pint of alcohol and a six pack of beer every day. Positive cocaine use in college. Last use was 20 years ago." Contrary to Breslin's assertion, the sentence about drinking is clearly in the present tense. Furthermore, in Dr. Faltas's reexamination of Breslin in 2008, Dr. Faltas noted Breslin stated "he has quit smoking and drinking alcohol since the last visit," indicating Breslin had been drinking until at least Dr. Faltas's initial examination in 2007. Breslin contends lay evidence cannot be disregarded for lack of medical evidentiary support, citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 548 (3d Cir. 2003). But lay evidence can be found not credible for other reasons, such as those the ALJ found. Finally, Breslin questions the validity of the state agency consultant's residual functional capacity assessment. Assuming, as the Commissioner does, Breslin means to question the medical evidentiary support for the assessment, Breslin's contention is unavailing. The ALJ found the assessment gave Breslin "the benefit of the doubt" of the medical evidence because Dr. Faltas had concluded Breslin's physical condition was "completely unremarkable."

At step five, the ALJ considered Breslin's residual functional capacity, age, education, and work experience to determine if he could "make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). The ALJ found Breslin was between the ages of 45 and 49 and had at least a high school education. The ALJ found the transferability of Breslin's skills was immaterial to whether Breslin could perform unskilled work. *See* SSR 82-41 ("[E]ven if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work."). Because of his residual functional capacity to do light work and his age, education, and work experience,

8

Breslin was not disabled under Rule 202.21 (for light work) and Rule 201.21 (for sedentary work) of the Medical-Vocational Guidelines. 20 C.F.R. pt. 404, subpt. P, app. 2.[8] The ALJ found Breslin's limitations did not erode his occupational base: under Social Security Rulings, sedentary jobs do not require standing or walking more than two hours in an eight hour workday, stooping more than occasionally, climbing, balancing, kneeling, crouching, crawling, or exposure to hazards such as machinery or heights. SSR 96-9p; SSR 83-14. The ALJ concluded Breslin was "capable of performing the following sedentary, unskilled jobs, according to their descriptions in the Dictionary of Occupational Titles: surveillance system monitor, call out operator, telephone quotation clerk, and scoreboard operator." (Citations omitted).

Breslin contends the ALJ was required to review additional vocational evidence beyond Social Security Rulings, such as testimony of a vocational expert, before concluding Breslin's nonexertional limitations did not erode his occupational base. Exertional limitations are those that affect the "ability to meet the strength demands of jobs . . . for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. §404.1569a(a). Nonexertional limitations are any other limitations, including Breslin's postural limitations (his limited ability to stoop, climb, balance, kneel, crouch and crawl) and his environmental limitations (his need to avoid concentrated exposure to hazards such as machinery and heights). *Id.*; SSR 96-9p. When a claimant has solely exertional limitations, his disability status is determined by the Medical-Vocational Guidelines

---

[8] The ability to do light work includes the ability to do sedentary work in the absence of additional limiting factors not present here. 20 C.F.R. § 416.967(b).

"without reference to additional evidence." *Sykes*, 228 F.3d at 269. When a claimant also has nonexertional limitations, like Breslin, the ALJ must reference additional evidence when determining if those limitations erode the claimant's occupational base. *Id.* at 270. Such evidence can be a Social Security Ruling as long as it is "crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Allen*, 417 F.3d at 407. In *Allen*, we stated the ALJ's conclusion was not supported by substantial evidence because "we are at a loss to find within the Ruling itself the conclusion the ALJ seems to find regarding the occupational base." *Id.* at 405. In contrast, the Rulings the ALJ cited here explicitly state the sedentary occupational base is not eroded by Breslin's nonexertional impairments. *See* SSR 96-9p (stating in sedentary jobs, "climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling . . . [is] not usually required," "[a]n ability to stoop occasionally . . . is required," and exposure to hazards such as machinery and heights is "considered unusual").

Breslin further contends the ALJ was required to provide advance notice to Breslin of his intention to rely on the Rulings instead of more individualized vocational evidence. In *Allen*, we stated that when the ALJ has not provided such advance notice, "[w]e think it only appropriate to give close scrutiny to the ALJ's reliance on a Ruling." *Id.* at 408. As the Rulings the ALJ relied upon here applied directly to Breslin's non-exertional impairments, the ALJ's reliance on them passes that scrutiny.

Finally, Breslin contends the ALJ erred by providing his "opinion" Breslin could perform the sedentary, unskilled jobs the ALJ culled from the Dictionary of Occupational

10

Titles. In promulgating the Medical-Vocational Guidelines, "administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the 'Dictionary of Occupational Titles' . . . published by the Department of Labor," among other publications. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b). By naming several unskilled, sedentary jobs listed in the Dictionary of Occupational Titles, the ALJ was not providing an opinion but simply noting several of the jobs of which the Social Security Administration has taken administrative notice. *See id.* at § 201.00 ("Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy.").

## III.

For the foregoing reasons, we will affirm the District Court's judgment and order.