**PIERRE PAUL JOSEPH, Appellant/Plaintiff**

**v.**

**HESS OIL VIRGIN ISLANDS CORP., Appellee/Defendant**

S. Ct. Civ. No. 2009-0054

Supreme Court of the Virgin Islands

March 8, 2011

LEE J. ROHN, ESQ., Rohn & Carpenter, LLC, St. Croix, USVI, *Attorney for Appellant*.

SUNSHINE S. BENOIT, ESQ., Bryant Barnes Beckstedt & Blair, LLP, St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(March 8, 2011)

CABRET, J. Pierre Paul Joseph injured his back while working as a laborer for United Dominion Construction, Inc. ("UDCI") at Hess Oil Virgin Islands Corporation's ("HOVIC") oil refinery on St. Croix. Joseph sued HOVIC, alleging that his injury was caused by HOVIC's negligence in failing to provide him with the proper equipment to safely perform his job. HOVIC moved for summary judgment, asserting that it was not liable because UDCI was an independent contractor that decided which equipment Joseph used. The motion remained pending in the Superior

Court for approximately eight years before the court granted summary judgment to HOVIC. Joseph filed this appeal asserting that the Superior Court erred in making credibility determinations and in not resolving all inferences in his favor. For the reasons that follow, the Superior Court's grant of summary judgment to HOVIC will be reversed.

## I. FACTS AND PROCEDURAL BACKGROUND

The record shows that when Joseph was injured, he was working for UDCI at HOVIC's oil refinery on St. Croix. At the time, HOVIC had contracted with UDCI to construct a fluid catalytic cracking unit at HOVIC's existing refinery. The contract between HOVIC and UDCI expressly designated UDCI as an "independent contractor" (J.A. 79) and generally required UDCI to provide all construction management and labor for the project. The contract further required UDCI to maintain control over the hiring and discharging of its employees, the designation of work hours, the classification of work for each employee, and to perform all work in accordance with OSHA standards.

However, even under the contract terms, UDCI was not in complete control of the work it performed at the refinery. The contract required UDCI to complete the work in accordance with "HOVIC's personnel and safety regulations which HOVIC has established for contractors performing work on its premises." (J.A. 79-80.) In addition, if HOVIC "disagree[d] with [UDCI's] method of execution of the Work," HOVIC could "advise [UDCI] in writing and both parties . . . [were obligated to] use their best efforts to resolve the dispute." (J.A. 79.) Under the contract, HOVIC provided all the engineering drawings, specifications, and "[a]ll construction equipment, construction tools and supplies as required by UDCI in writing." (J.A. 87.) And, pursuant to the contract, HOVIC designated a "construction manager with whom [UDCI could] consult at all regular work hours." (J.A. 86.)

The injury which provided the basis for the underlying civil action occurred on April 29, 1993, while UDCI was performing construction services under the contract. On that morning, Joseph reported to his immediate supervisor, a UDCI employee, who told him and another UDCI laborer to report to the general foreman, also a UDCI employee, for their job assignment. The general foreman instructed Joseph and the other employee to resume digging a hole that they had been excavating the previous day. Because there were electrical wires buried in the area,

Joseph was using a shovel to dig the hole. About one hour after they started digging that day, Joseph's back started to hurt. When he could no longer continue digging, Joseph went to his supervisor and told the supervisor he needed to see the nurse about his back injury.

Joseph ultimately had surgery on his back, and on April 12, 1995, he sued HOVIC alleging that his

> injuries were a direct result of the negligent supervision by HOVIC of the workplace by conduct including, but not limited to: (a) failing to provide proper tools to dig the holes; (b) refusing to allow the use of a forklift; which would have saved Plaintiff from injury; [and] (c) failing to properly supervise the worksite, knowing that manual labor would be required in the place of a forklift.

(J.A. 29-30.) (Paragraph indentions omitted).

In February of 2000, HOVIC moved for summary judgment on the ground that it was not liable for Joseph's injuries because his employer, UDCI, was an independent contractor, and HOVIC played no part in supervising Joseph or in deciding which tools he would use in performing his work. In support of its motion, HOVIC pointed to the contract terms which designated UDCI as an independent contractor and which required UDCI to manage the construction. HOVIC also relied on deposition testimony showing that UDCI, not HOVIC, actually controlled and supervised all aspects of Joseph's work, including the selection of tools to be used in completing the work.

Specifically, HOVIC pointed out that, in his deposition, Joseph testified that when he arrived at work on the day of his injury, he first reported to his supervisor, a UDCI employee. The supervisor instructed Joseph to report to the general foreman, also a UDCI employee, for his job assignment, and the general foreman instructed Joseph to resume digging the hole he had been working in the previous day. According to Joseph, he and his co-worker, John Liburd, then went to UDCI's onsite warehouse to obtain shovels for their work. Joseph testified that they used shovels to dig, instead of machines,

> because they have [under]ground wire, that's the reason they don't send the machine to do it. Tell the men have to do it by the hand. If the machine do it, it could cause the factory to blow up . . . . They don't know which part the underground wire is. When we was digging, sometime we get one wire. [sic]

(J.A. 303.) When Joseph was asked who decided which type of shovel they would use, he testified: "Me and Liburd decide that . . . because we had no other choice. They don't give us nothing so we had to do. [sic]" (J.A. 301-02.) After obtaining the shovels, Joseph and Liburd resumed digging the hole they had been working on the previous day. According to Joseph, the general foreman "always" monitored his work to ensure he was doing it correctly (J.A. 303), and he did not see any HOVIC employees around his work site on that day. Later in his deposition, however, Joseph stated that during the "weeks and months" that he was digging holes, he would see HOVIC supervisors passing by his work site. (J.A. 306.)

Based on this evidence and the deposition testimony of another HOVIC representative who testified that the tool and equipment warehouse "was under the control and management of the UDCI personnel," (J.A. 106) HOVIC argued that there was no genuine issue as to who controlled the decisions regarding Joseph's work assignment and the tools he used.

In response to HOVIC's evidence, Joseph pointed to evidence in the record which, he asserted, showed that HOVIC retained significant control over Joseph's work, including the decision of which tools he used to perform his job.[1] In an affidavit from Leo Ashe, Joseph's foreman on the day he was injured, Ashe spoke about the control that HOVIC exerted over UDCI's work:

> On a daily basis, the general foreman of our crew . . . would meet with the Hess people to get a Hess permit that would tell us what work we were allowed to do that day. If the Hess permit did not specify the work then, even if UDCI told us to do it, we could not because it was not permitted by Hess. During the day, we would then follow the work Hess told us to do by the Hess permit . . . . If Hess did not approve the use of equipment on the job, then we could not get the equipment . . . .

---

[1] We note that many of these affidavits are from former HOVIC employees who had no personal knowledge of either the contractual relationship between UDCI and HOVIC or the parties' conduct while UDCI was performing the construction contract at issue. As a general rule "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). Because we conclude that there is other, sufficient evidence to defeat HOVIC's motion for summary judgment, we render no opinion as to the admissibility of these affidavits.

The equipment all belonged to Hess and its use had to be approved by Hess.

(J.A. 470-71.)

Joseph also presented the affidavit of Anthony Joseph ("Anthony"), another UDCI employee at the time of Joseph's injury. Anthony stated that he worked for UDCI for about two years, and "either worked with [Joseph] or near him on a daily basis." (J.A. 472.) On the day of Joseph's injury, Anthony "was working on the same crew as he." (J.A. 472.) According to Anthony, "Hess supervisors would often tell [him] to stop doing [his] work a particular way and tell [him] that [he] had to follow the Hess procedures and to do [his] work a different way according to how they wanted it done." (J.A. 473.) Like Ashe, the foreman, Anthony stated that Hess would issue a permit that dictated the work that was to be performed on any given day and the equipment that was to be used to complete the task. Finally, Anthony stated that at least once per hour a Hess supervisor would visit his work site to "observe" their work and provide further instructions to their foreman about the work. (J.A. 474.)

Joseph also pointed to evidence of a "Hands-on Tools" program as evidence of HOVIC's control over the work site. (J.A. 249.) According to Rocco Colabella, Jr., who was HOVIC's audit payable's manager on the project, the program was administered by HOVIC as "a survey . . . to measure the activity in the field of craft workers." (J.A. 249.) These surveys measured the amount of time workers were observed actually working with their tools, as opposed to the tools being idle. Colabella testified that under the program HOVIC survey crews were dispatched to the work site "[s]everal times a day[,] . . . at least four," and randomly "observed crews and they marked whether there was activity working with [a] tool, or they were not working with a tool." (J.A. 249.) These surveys resulted in daily reports, and the reports were distributed to UDCI's construction manager and administrative manager. UDCI's resident construction manager for the project, William Osner, stated in deposition testimony that he would discuss the program reports with HOVIC every other day.

Joseph argued that this evidence created a genuine issue of material fact as to whether HOVIC retained sufficient control over his work at the refinery, such that the defendant was not entitled to summary judgment.

It appears from the Superior Court's docket that HOVIC's motion for summary judgment, indeed the litigation at large, laid dormant from 2001

until 2009, when the Superior Court granted the motion. The Superior Court found that the undisputed evidence showed

> that Joseph received his work orders on the day of his injury from the UDCI general foreman and his supervisor and there were no HOVIC supervisors present when the injury occurred . . . . While Joseph contends that HOVIC directed and controlled the manner in which UDCI performed its work, he has not presented evidence of such.

(J.A. 8.) In addition, the court ruled that because UDCI was hired to construct a facility at HOVIC's refinery, a job distinct from HOVIC's regular business of refining oil, and because the parties believed they were creating an independent contractor relationship, UDCI was an independent contractor. The Superior Court concluded that there were no genuine issues of material fact, and that the undisputed evidence showed that HOVIC had not retained sufficient control to be held liable for Joseph's injury under the section 414 of the RESTATEMENT (SECOND) OF TORTS ("*Restatement*"). Joseph filed this appeal from the Superior Court's ruling.

Joseph asserts that the Superior Court erred in granting HOVIC's motion for summary judgment because there is a genuine issue of material fact as to whether UDCI was an independent contractor. In any event, Joseph contends, the Superior Court ignored evidence showing that HOVIC exercised control over the operative details of Joseph's work such that HOVIC could be held liable for negligently exercising that control under section 414 of the RESTATEMENT.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with · jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court."

In *Williams v. United Corp.*, 50 V.I. 191, 194-95 (V.I. 2008), we stated the applicable standard for reviewing a Superior Court's grant of summary judgment:

> This Court exercises plenary review of a Superior Court's grant of summary judgment. On review, we apply the same test that the lower court should have utilized. Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law . . . . When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the nonmoving party's conflicting allegations as true if "supported by proper proofs. The non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way. Therefore, to survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance. Importantly, in our analysis, this Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party.

(Citations, quotation marks, and paragraph indentions omitted).

### III. DISCUSSION

To prevail on his negligence claim at trial, Joseph would need to show that HOVIC owed him a legal duty, that HOVIC breached that duty, and that HOVIC's breach caused his damages. *See Mill Harbor Condo. Owner's Ass'n v. Marshall*, 53 V.I. 581, 586 (V.I. 2010). This appeal concerns only the first element — whether HOVIC owed Joseph a legal duty. In granting summary judgment to HOVIC, the Superior Court ruled that HOVIC owed no legal duty to Joseph because he worked for an independent contractor of HOVIC, and HOVIC did not retain control over any part of Joseph's work.[2]

In addressing the Superior Court's ruling, we note initially that HOVIC's ultimate liability in this case is not dependant on UDCI's status

---

[2] We note that the sole question presented by HOVIC's motion for summary judgment is whether HOVIC owed a legal duty to Joseph. Accordingly, this appeal does not address the questions of whether HOVIC breached that duty or whether a breach caused Joseph's alleged damages.

as a servant or independent contractor of HOVIC. Joseph alleged in his complaint that his injury was caused by HOVIC's direct negligence. Whatever UDCI's status may have been, Joseph needed to show that HOVIC had such control over how he performed his work that it had a duty to exercise its control with due care. *See Figueroa v. Hess Oil V.I. Corp.*, 198 F. Supp. 2d 632, 638 (D.V.I. App. Div. 2002) (recognizing that "common law principles of negligence allow injured parties to recover against anyone who fails to carry out their affirmative duties with due care."). The rationale is simply that " 'anyone, including an employer of an independent contractor, may be held liable for his or her own negligence.' " *Hood v. Hess Oil V.I. Corp.*, 650 F. Supp. 678, 680, 22 V.I. 456 (D.V.I. 1986) (quoting *Moloso v. Alaska*, 644 P.2d 205, 211 n.5 (Alaska 1982)). Thus, the salient question is whether HOVIC retained sufficient control over Joseph to create a legal duty to him.

██ The general rule, on which HOVIC relies, is that " 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.' " *Figueroa*, 198 F.Supp.2d at 637 (quoting RESTATEMENT § 409). But the RESTATEMENT, which supplies the rules of decision for this issue, provides exceptions to the general rule.[3] Among these exceptions are those based on the employer's own, direct negligence. *See* RESTATEMENT, §§ 410-415; *see also Gass v. V.I. Tel. Corp.*, 311 F.3d 237, 240-41, 45 V.I. 649 (3d Cir. 2002) ("The Restatement divides the exceptions to that general rule into those based on an employer's direct negligence, *see* §§ 410-15, and those involving vicarious liability imposed on the employer due to the negligence of the independent contractor, *see* §§ 416-429. *See* Restatement ch. 15, topic 2, introductory note.").

██ One of these exceptions is for negligence in exercising control retained by the employer of the independent contractor. This exception, which is established by section 414 of the RESTATEMENT, provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise

---

[3] "In the absence of local laws to the contrary, 'the restatements of the law approved by the American Law Institute. . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply.' " *Myers v. Derr*, 50 V.I. 282, 290 (V.I. 2008) (quoting 1 V.I.C. § 4).

reasonable care, which is caused by his failure to exercise his control with reasonable care.

Comment c of section 414 elaborates on the type of control that is necessary to create a legal duty under section 414:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

RESTATEMENT § 414 cmt. c. Thus, "where an employer assumes affirmative duties, directs the method of performance of those duties, or offers specific instruction regarding the manner of performance, he may be liable when he exercises that control without due care." *Figueroa*, 198 F. Supp. 2d at 644 (citing *Hood*, 650 F.Supp. at 680; *Hooker v. Dept. of Trans.*, 27 Cal. 4th 198, 115 Cal. Rptr. 2d 853, 38 P.3d 1081 (2002)); *Moloso*, 644 P.2d at 205.

■ In the instant case, Joseph has alleged that HOVIC is liable for his injuries because it failed to provide him with the proper equipment to excavate the hole. Whether HOVIC's alleged liability is premised on common law negligence or section 414 negligent retention of control makes no difference; both claims are premised on HOVIC's alleged failure to exercise reasonable care in deciding which equipment Joseph used to complete his work. The Superior Court's grant of summary judgment to HOVIC was based on the court's finding that there was "no evidence presented suggesting that HOVIC controlled the manner and method in which Joseph completed his work or that HOVIC controlled UDCI's daily work." (J.A. 17.) This ruling, however, disregards evidence showing that HOVIC retained at least some control over the decision of which tools Joseph was given to perform his work.

■ As discussed above, both Joseph's foreman and his coworker stated in their affidavits that HOVIC decided which tools could be used to

complete that work. Although HOVIC cited testimony showing that UDCI and Joseph decided what tools he used to dig the hole, testimony cited by Joseph creates a genuine issue as to whether HOVIC actually controlled that decision. "Contradictory testimony on fundamental facts may not be resolved as a matter of law and presents a bar to summary judgment." *Carty v. Hess Oil V.I. Corp.*, 78 F. Supp. 2d 417, 421, 42 V.I. 125 (D.V.I. App. Div. 1999). Indeed, a jury may find that by issuing a work permit that prescribed the equipment to be used, HOVIC merely presented Joseph with a Hobson's choice between the shovel or no tool at all. Such control over the equipment used to complete the job, if exercised by HOVIC, created a legal duty to use of reasonable care under section 414. *See id.* at 420 (where the parties presented conflicting evidence concerning who had the responsibility to provide the proper tools, genuine issue of material fact remained concerning whether a legal duty arose under section 414.); *see also Garcia v. Wooton Constr., Ltd.*, 387 Ill. App. 3d 497, 900 N.E.2d 726, 734, 326 Ill. Dec. 829 (2008) (the general contractor's control over the use of a crane that plaintiff alleged he needed to lift bolts, but was not provided to plaintiff for the task, created a jury issue as to whether contractor reasonably exercised its control over the use of the crane so as not to expose plaintiff to foreseeable danger of harm.)

The question of whether HOVIC retained sufficient control to create a legal duty to Joseph is a question of fact that, under the circumstances of this case, must be resolved by a jury. *See Figueroa*, 198 F. Supp. 2d at 645; *Carty*, 78 F. Supp.2d at 421-22; *see also Kostrzewa v. Suffolk Constr. Co, Inc.*, 73 Mass. App. Ct. 377, 897 N.E.2d 1272, 1274 (2008). "It should not be determined on summary judgment unless, viewing the evidence in the light most favorable to [Joseph], the undisputed material facts demonstrate, as matter of law, that [HOVIC] did not exercise any 'meaningful control, however minimal, over [UDCI].'" *Id.* (quoting *Dilaveris v. W.T. Rich Co.*, 424 Mass. 9, 673 N.E.2d 562 (1996)). Because Joseph presented evidence which, viewed in the light most favorable to him, showed that HOVIC retained control over UDCI's work, and more specifically the tools Joseph used to compete his work, the Superior Court erred in granting summary judgment to HOVIC. *See Figueroa*, 198 F. Supp. 2d at 645; *Carty*, 78 F. Supp. 2d at 421-22.

## IV. CONCLUSION

In granting summary judgment to HOVIC, the Superior Court ignored evidence that the defendant retained control over part of UDCI's construction work at the refinery. This evidence, viewed in a light most favorable to Joseph, created a genuine issue of material fact as to whether HOVIC owed a legal duty to Joseph to exercise that control with reasonable care. Accordingly, the Superior Court erred in granting summary judgment to HOVIC, and the court's order will be reversed.