**TAYNACLEONE CREQUE HODGE, Plaintiff**

**v.**

**VIRGIN ISLANDS TELEPHONE CORP., BONNEVILLE GROUP VIRGIN ISLANDS CORP., and NOLASCO COMMUNICATIONS, INC., Defendants**

Case No. ST-12-CV-298

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

April 11, 2014

JOEL H. HOLT, ESQ., St. Croix, USVI, *For the Plaintiff.*

MIA L. WOODARD, ESQ., Law Offices of Douglas L. Capdeville, P.C., St. Croix, USVI, *For V.I. Telephone Corp., Defendant.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(April 11, 2014)

█ Pending before the Court are Defendant Virgin Islands Telephone Corp.'s October 24, 2013, Motion for Summary Judgment[1] and Plaintiff

---

[1] Plaintiff's Cross-Motion also included a reply to Defendant Virgin Islands Telephone Corp.'s Motion for Summary Judgment. As the Hon. Judge Christian noted in *Jo Anne Stickler v. Mandahl Bay Holding, Inc.*, Case No. ST-10-CV-331, Memorandum Opinion, August 28, 2013, n.2, "[t]he incorporation of a cross-motion within a memorandum in response to opposition to an existing motion is not authorized by the federal or local rules of procedure." As a result, the attorneys are advised to closely follow all applicable rules of procedure such as LRCi 7.3 in future motions filed before this Court.

Taynacleone Creque Hodge's November 4, 2013, Cross-Motion for Summary Judgment.[2] For the following reasons Defendant's Motion shall be denied and Plaintiff's Motion shall be granted.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a Complaint on June 6, 2012, which she amended for a second time on April 8, 2013, alleging that as a result of Defendants' negligence, Plaintiff suffered injuries, including being temporarily knocked unconscious, when she was hit by a falling cable in Subase, St. Thomas on May 23, 2012. Specifically, Plaintiff alleges that Defendant Virgin Islands Telephone Corp. ("VITELCO") was negligent in its supervision of Defendant Bonneville Group Virgin Islands, Corp. ("Bonneville"), with whom VITELCO contracted to install hybrid fiber-optic coaxial cable as part of its modernization project across St. Thomas. Plaintiff further alleges that Bonneville and Bonneville's sub-contractor, Defendant Nolasco Communications Inc. ("Nolasco"), were negligent in supervising their employees to ensure that the area was secured and that all appropriate safety measures were taken before the accident.

## STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable to the Virgin Islands Superior Court through Superior Court Rule 7, provides that summary judgment is appropriate only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[3]

In considering a motion for summary judgment, a court must "draw . . . all reasonable inferences from the underlying facts in the light most favorable to the non-moving party."[4] Once the movant demonstrates that no genuine

---

[2] Defendant Virgin Islands Telephone Corp. responded to Plaintiff's Reply and Cross-Motion on November 21, 2013, to which Plaintiff responded on December 2, 2013.

[3] FED. R. CIV. P. 56. *See V.I. Housing Auth. v. Santiago*, 57 V.I. 256, 264 (V.I. 2012).

[4] *Battaglia v. McKendry*, 233 F.3d 720, 722 (3d Cir. 2000); *see Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 127 (V.I. 2009).

issue of material fact exists, the burden shifts to the non-moving party to indicate that a genuine issue of material fact.[5]

## ANALYSIS

The factual allegations are largely not in dispute in this matter. Specifically, the Defendant VITELCO and Plaintiff agree that VITELCO entered into a contract on October 13, 2011, with Bonneville to provide "the service of qualified construction personnel and equipment, materials, tools, vehicles, etc. . . . to perform and/or superintend the performance of . . . the installation of underground telecommunication fiber optic cable under the direction of VITELCO management," also known as the "HFC project."[6] In turn, Bonneville entered into a sub-contract with Nolasco on November 1, 2011, to provide "equipment and labor" and "furnish certain materials for the construction of the HFC Project" . . . "in accordance with all provisions of" the contract between VITELCO and Bonneville.[7] VITELCO also contracted with non-party Motorola, Inc. to provide, among other services, supervision of the implementation of the modernization project; but Defendant VITELCO and Plaintiff dispute the nature of the relationship between VITELCO and Motorola, as well as Motorola's level of involvement in the supervision of the installation of the fiber optic coaxial cable.

Defendant VITELCO and Plaintiff also do not dispute that Nolasco workers failed to abide by proper safety precautions and, as a result, Plaintiff was injured when a cable fell and struck Plaintiff on the head. Specifically, VITELCO and Plaintiff do not dispute that at the time of the accident on May 23, 2012, Nolasco workers were installing fiber optic coaxial cable above-ground in Subase. The process of installation involved first tensing a stranded steel cable affixed to two poles, draping the fiber optic coaxial cable across between the two poles, and then attaching the fiber optic coaxial cable to the stranded steel cable with wire

---

[5] *See, e.g., Galloway v. Islands Mechanical Contractor, Inc.*, 2012 U.S. Dist. LEXIS 129014 (D.V.I. Sept. 11, 2012); *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (noting an issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue).

[6] Defendant Virgin Islands Telephone Corp.'s Motion for Summary Judgment, Oct. 24, 2013, Exhibit B (Oct. 13, 2011, Agreement between Bonneville and VITELCO).

[7] Defendant Virgin Islands Telephone Corp.'s Motion for Summary Judgment, Oct. 24, 2013, Exhibit B (Nov. 1, 2011, Agreement between Nolasco and VITELCO).

using a "lasher." VITELCO concedes that proper safety procedures were not followed during the installation process because (1) no warning cones were placed below the lines to warn pedestrians of the overhead work and (2) protective safety clips were not used to hold the cable while it was being installed. As a result of Nolesco's failure to follow proper safety procedures, a fiber optic coaxial cable fell and hit Plaintiff on her head causing her injuries when she was walking by the installation site. Defendant does not argue that Plaintiff was contributorily negligent.[8]

While the facts are largely agreed, VITELCO and Plaintiff disagree on whether VITELCO is vicariously liable under these facts for the alleged negligence of the Nolasco workers under several sections of the Restatement (Second) of Torts and the Restatement (Third) of Torts.[9] Considering the recent Supreme Court of the Virgin Islands decision in *Government of the Virgin Islands v. Connor*,[10] the Superior Court, in an exercise of its "concurrent authority with . . . [the Supreme] Court to shape Virgin Islands common law"[11] in the absence of local law to the contrary or binding precedent, must conduct a *"Banks* analysis"[12] to determine the applicable common law.[13] A *Banks* analysis consists of a balancing of the following three non-dispositive factors:

(1) whether any Virgin Islands courts have previously adopted a particular rule;
(2) the position taken by a majority of courts from other jurisdictions; and

---

[8] *See* 5 V.I.C. § 1451.

[9] In *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), the Supreme Court of the Virgin Islands held that, while the Restatements may be persuasive authority in determining the common law, they "no longer constitute binding legal authority in this jurisdiction" because 1 V.I.C. § 4 has been impliedly repealed. *Gov't of the V.I. v. Connor*, 60 V.I. 599, 602 (V.I. 2014). As a result, the Court ordered the parties to submit supplemental briefing on the applicable common law in this matter. Defendant submitted a supplemental brief on March 18, 2014. Plaintiff also submitted a supplemental brief on March 21, 2014, to which Defendant replied on April 3, 2014.

[10] 60 V.I. at 605 (holding that the Superior Court may be summarily reversed if it does not perform a *Banks* analysis in the first instance).

[11] *Id.* at 604 (noting that the Superior Court may not "mechanistic[ally] and uncritical[ly]" rely on the Restatements when determining the common law).

[12] *See Simon v. Joseph*, 59 V.I. 611 (V.I. 2013) (interpreting *Banks*), *Matthew v. Herman*, 56 V.I. 674 (V.I. 2012).

[13] *Connor*, 60 V.I. at 602.

110

(3) most importantly, which approach represents the soundest rule for the Virgin Islands.[14]

Here, it appears that no local statute or binding precedent addresses the nondelegable duty exceptions to the generally accepted common law principle, adopted by the Supreme Court in *Joseph v. Hess Oil Virgin Islands Corp.*,[15] that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."[16]

Defendant VITELCO argues generally that because the exceptions to the general rule, as outlined in RESTATEMENT (SECOND) OF TORTS §§ 410-429, have not been previously adopted in this jurisdiction other than § 414, *none* of these exceptions are applicable in this jurisdiction. The Court disagrees with Defendant's sweeping proposition. Specifically, while the *Joseph* Court only explicitly adopted the RESTATEMENT (SECOND) OF TORTS § 414,[17] the Supreme Court recognized in *dicta* that several other exceptions to the general rule of liability exist, which are

---

[14] *Simon*, 59 V.I. at 623.

[15] 54 V.I. 657 (V.I. 2011). The *Joseph* Court adopted verbatim the language of RESTATEMENT (SECOND) OF TORTS § 409. *Joseph*, 54 V.I. at 665-666 (citing *Figueroa v. Hess Oil Virgin Islands Corp.*, 198 F. Supp. 2d 632 (D.V.I. 2002)). This common law principle is mirrored in the language of RESTATEMENT (THIRD) OF TORTS § 57, providing that, as a general rule, "an actor who hires an independent contractor is not subject to vicarious liability for physical harm caused by the tortious conduct of the contractor." Of note, *Joseph* predates *Banks* by a couple of months and appears to blindly adopt RESTATEMENT (SECOND) OF TORTS § 409 upon the basis of the implicitly repealed 1 V.I.C. § 4. *See Joseph*, 54 V.I. at 665, n.3. While the *Connor* Court indicated that the Superior Court is not necessarily bound by precedent that mechanistically and automatically applies the Restatement, *Connor*, 60 V.I. at 607 n.1, the Court does not find it necessary to depart from the *Joseph* Court's holding, and concludes a *Banks* analysis is unnecessary to apply the common law principle here. Further, the general rule, as outlined both by RESTATEMENT (SECOND) OF TORTS § 409 and RESTATEMENT (THIRD) OF TORTS § 57, not only has been repeatedly applied in the Virgin Islands, *see, e.g.*, *Joseph*, 54 V.I. at 665, *Figueroa*, 198 F. Supp. 2d at 637, but a review of the case citations in the relevant Restatement sections reveals that this principle has been adopted in a vast majority of jurisdictions.

[16] RESTATEMENT (SECOND) OF TORTS § 409.

[17] RESTATEMENT (SECOND) OF TORTS § 414 provides that "[o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Considering the Court resolves this matter on other grounds, the RESTATEMENT (SECOND) OF TORTS § 414 need not be addressed here.

111

reflected in the RESTATEMENT (SECOND) OF TORTS §§ 410-429. Further, in *Gass v. Virgin Islands Telephone Corp.*, the U.S. Court of Appeals for the Third Circuit, the Court of last resort in this jurisdiction in all cases commenced prior to December 28, 2012,[18] recognized and discussed in detail several "exceptions" to the RESTATEMENT (SECOND) OF TORTS §§ 410-429, specifically addressing the 'peculiar risk' doctrine.[19] Thus, to broadly suggest that *none* of these common law exceptions are applicable in the Virgin Islands ignores that many of these principles have been previously applied in this jurisdiction.

■ To establish a plausible claim for negligence, a plaintiff must allege sufficient facts that establish "(1) a duty of care, (2) a breach of that duty by defendant, which (3) was the factual and proximate (legal) cause of (4) damages to plaintiff."[20] Here, the question remains whether Defendant VITELCO, as the employer of an independent contractor, owes a duty of care to Plaintiff. Thus, the Court now turns to the specific "nondelegable duty" exceptions under the RESTATEMENT (SECOND) OF TORTS §§ 417 and 428, under which Plaintiff seeks summary judgment. While the Court need not address Plaintiff's arguments pursuant to the RESTATEMENT (SECOND) OF TORTS §§ 416 and 427 regarding "peculiar risk" or "special danger to others" because the Court finds Defendant VITELCO liable pursuant to both the RESTATEMENT (SECOND) OF TORTS §§ 417 and 428, the Court recognizes that the nondelegable duty exceptions outlined in the RESTATEMENT (SECOND) OF TORTS §§ 416-429 are often applied

---

[18] *United Indus., Serv., Transp., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex rel. Bason v. Gov't of V.I.*, 746 F.3d 115 (3d Cir. 2014), as amended (Mar. 21, 2014) (holding that, pursuant to the language of H.R. 6116, the Third Circuit Court of Appeals retains certiorari jurisdiction over proceedings that were filed in Virgin Islands courts before the enactment date of H.R. 6116.).

[19] *Gass v. V.I. Tele. Corp.*, 45 V.I. 649, 661 (3d Cir. 2002). The Court recognizes that the *Gass* Court limited its discussion to a situation where the injured person is an employee of the independent contractor, and further, that it appears that the *Gass* Court, similarly to the *Joseph* Court, based its reliance on the Restatements on 1 V.I.C. § 4. *See supra* at n.15.

[20] *Kosick v. Bar-Sela*, 49 V.I. 3, 6 (V.I. Super. Ct. 2007). While it appears the Supreme Court has not explicitly conducted a *Banks* analysis to adopt the common law elements of negligence, those have been implicitly adopted in many of its decisions. *See, e.g., Brady v. Cintron*, 55 V.I. 802, 823 (V.I. 2011). Further, the essential elements of negligence are so widely accepted and fundamental to the practice of law in the United States and the Virgin Islands, that requiring a *Banks* analysis in this instance would yield the same result.

interchangeably in cases such as this.[21] Thus, many of the cases referenced in this Memorandum Opinion's *Banks* analysis may also discuss aspects of alternative theories of liability because the Restatement exceptions collectively represent the longstanding public policy that an individual or corporation may not delegate a duty, particularly a duty to protect members of the public, in certain enumerated circumstances.[22]

## I. *Banks* Analysis of the RESTATEMENT (SECOND) OF TORTS § 417

■ Conducting a *Banks* analysis, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 417 is an expression of the common law of this jurisdiction and finds it proper to adopt and apply § 417 here. Specifically, RESTATEMENT (SECOND) OF TORTS § 417 provides that:

> One who employs an independent contractor to do work in a public place which unless carefully done involves a risk of making the physical condition of the place dangerous for the use of members of the public, is subject to liability for physical harm caused to members of the public by a negligent act or omission of the contractor which makes the physical condition of the place dangerous for their use.

Under the first *Banks* factor, while several Virgin Islands cases have addressed a situation where the injured individual was an employee of an independent contractor[23] and also cite generally to the RESTATEMENT (SECOND) OF TORTS §§ 410-429 in *dicta*,[24] it appears that no Virgin Islands jurisprudence exists addressing the specific instance in which a member of the public, injured while in a public place due to the negligence of an independent contractor, seeks to recover against the employer of the independent contractor.[25] As such, while not dispositive, this first *Banks* factor

---

[21] *See, e.g., Smith v. Lucky Stores,* 61 Cal. App. 3d 826, 828, 132 Cal. Rptr. 628 (1976) (recognizing that RESTATEMENT (SECOND) OF TORTS §§ 416 to 429 are often "overlapping").

[22] *See generally* 23 A.L.R. 984 (originally published in 1923) (noting that this policy originates as far back as 1881); *City of Chicago v. Robbins,* 67 U.S. 418, 426, 17 L. Ed. 298 (1862) (noting that an owner of a premises cannot "escape liability by letting work out like this to a contractor, and shift responsibility on to him if an accident occurs" where the work creates a public nuisance on a sidewalk adjacent to the premises.)

[23] *See, e.g., Monk v. V.I. Water and Power Authority,* 53 F.3d 1381, 1393, 32 V.I. 425 (3d Cir. 1995); *Gass,* 45 V.I. 649.

[24] *Joseph,* 54 V.I. at 665.

[25] Notably, a review of early case law cited in the RESTATEMENT (SECOND) OF TORTS § 417, suggests that the early form of this common law principle originally arose out of the tort of

113

does not weigh favorably toward the adoption of the RESTATEMENT (SECOND) OF TORTS § 417.

Additionally, the Court does not find the second *Banks* factor — the position taken by a majority of courts from other jurisdictions — particularly dispositive in the Court's analysis because, as previously discussed, the nondelegable duty exceptions, although accepted by a majority of jurisdictions as a general principle, are applied in nuanced ways in each jurisdiction.[26] Nevertheless, the Court finds it persuasive that it appears that a majority of jurisdictions have adopted a similar common law *principle* as that outlined in the RESTATEMENT (SECOND) OF TORTS § 417. Specifically, a review of the case citations listed in the RESTATEMENT (SECOND) OF TORTS § 417, particularly those upon which "Illustrations 1 and 2" are based, demonstrate that it is a generally accepted common law principle across several jurisdictions, including California, Illinois, Louisiana, Michigan, New York, North Carolina, North Dakota, Ohio, Kentucky, Connecticut, Massachusetts, New Hampshire, New Jersey, South Dakota, Minnesota, Nebraska, Oklahoma, Pennsylvania, and Montana,[27] that, when an individual or corporation undertakes work that

---

nuisance. *See generally* RESTATEMENT (SECOND) OF TORTS § 417 (collecting cases). Public nuisance has long been accepted as a common law tort in the Virgin Islands and has been applied in numerous cases. *See, e.g., Hodge v. Bluebeard's Castle, Inc.*, 44 V.I. 242 (V.I. Terr. Ct. 2002); *Gov't Guarantee Fund v. Hyatt Corp.*, 34 V.I. 257, 166 F.R.D. 321 (D.V.I. 1996) *aff'd sub nom.* 95 F.3d 291, 35 V.I. 483 (3d Cir. 1996); *Henry v. St. Croix Alumina, LLC*, CIV.A. 1999-0036, 2009 U.S. Dist. LEXIS 80830 (D.V.I. Aug. 28, 2009) *order clarified on reconsideration*, CIV. A. 1999-0036, 2009 U.S. Dist. LEXIS 93866 (D.V.I. Oct. 7, 2009); *see also* 14 V.I.C. § 1462 (criminalizing maintaining or failing to remove a public nuisance).

[26] *See supra* at n.21. For instance, several cases apply the principle embodied in RESTATEMENT (SECOND) OF TORTS § 418, which provides that "[o]ne who is under a duty to construct or maintain a highway in reasonably safe condition for the use of the public, and who entrusts its construction, maintenance, or repair to an independent contractor, is subject to the same liability for physical harm to persons using the highway while it is held open for travel during such work, caused by the negligent failure of the contractor to make it reasonably safe for travel, as though the employer had retained the work in his own hands." Thus, while § 418 applies only to a government entity — such as a municipality — the RESTATEMENT (SECOND) OF TORTS § 417 may also analogously apply in a situation where the government entity hires an independent contractor to perform work in an effort to maintain a highway. *See, e.g., Wiggs v. City of Phoenix*, 198 Ariz. 367, 370, 10 P.3d 625, 628 (2000).

[27] RESTATEMENT (SECOND) OF TORTS § 417 (collecting cases); *see also* La. Prac. Constr. Law § 9:1 (2013 ed.) (suggesting Louisiana has codified the generally accepted rule that "a

is located in a public way . . . there can be no doubt that in its maintenance he assumes an affirmative duty to exercise reasonable care to know that it is . . . in a reasonably safe [condition] . . . [and] [w]hatever public safety reasonably requires is the measure of the diligence of precaution to be observed by him, for his use is subordinate to the public rights.[28]

Thus, this duty to the public is of such importance that it may not be delegated to a contractor, even if liability is explicitly apportioned to the contractor in the contract.[29] Plaintiff has also persuasively cited to several cases that apply the RESTATEMENT (SECOND) OF TORTS § 417 in some form, including Indiana,[30] Minnesota,[31] New York,[32] and Tennessee.[33]

---

contractor is liable for negligence which, during the course of construction, proximately causes damage or injury to persons who are rightly on the construction site, persons legally on adjacent premises and other persons lawfully using streets or highways adjacent to the construction site," and invalidating certain "hold harmless" or indemnity agreements).

[28] *Brown Hotel Co. v. Sizemore*, 303 Ky. 431, 434, 197 S.W.2d 911, 913 (1946).

[29] *Id.*; *see generally* 41 AM. JUR. 2D, Independent Contractors § 43, p. 518 (2005) (while liability may not be apportioned to the contractor via a contract provision, this does not imply that an employer cannot recover from the independent contractor in the form of indemnification from the contractor).

[30] *See N. Indiana Pub. Serv. Co. v. Otis*, 145 Ind. App. 159, 212, 250 N.E.2d 378, 411 (1969) (concurrently applying RESTATEMENT (SECOND) OF TORTS § 417 and an "imminently dangerous" standard).

[31] *See Brown v. Gustafson*, 264 Minn. 126, 130, 117 N.W.2d 763, 766 (1962) (citing *Lamb v. S. Unit Jehovah's Witnesses*, 232 Minn. 259, 45 N.W.2d 403 (1950)) ("As a general rule, an employer is not liable for the acts of an independent contractor or his servants. However, there are so many exceptions to the rule that an employer is not liable for the negligence of an independent contractor whom he employs 'that the rule is now primarily important as a preamble to the catalog of its exceptions.' One of the exceptions is that of a person under a duty to the public to see that the work he is about to have done is carefully performed so as to avoid injury to others. In such case, the party causing the work to be done cannot, by letting it to a contractor, avoid liability in case the work is negligently done to the injury of another. The principle that a contractor may be employed to do a particular job under circumstances which leave the owner of premises charged with the duty which regularly attaches to him to see that the work does not endanger the safety of others, and that such absolute duty is nondelegable to an independent contractor, has been applied by this court in a number of similar cases.") (internal citations omitted).

[32] *See Tytell v. Battery Beer Distrib., Inc.*, 202 A.D.2d 226, 608 N.Y.S.2d 225, 226 (1994) (adopting a rule analogous to RESTATEMENT (SECOND) OF TORTS § 417).

[33] *See Brinkley v. Gallahar*, 50 Tenn. App. 129, 137, 359 S.W.2d 857, 861 (1962).

Finally, the third and most important *Banks* factor — which approach represents the soundest rule for the Virgin Islands — weighs strongly in favor of adopting the RESTATEMENT (SECOND) OF TORTS § 417 as a reflection of the common law of this jurisdiction. First, as previously discussed, the purpose this particular nondelegable duty exception is to ensure that reasonable care is taken to protect individuals who are lawfully in a "public place," and thereby is in accord with the local public policy to protect members of the public from harm.[34] While Defendant argues that adopting the RESTATEMENT (SECOND) OF TORTS § 417, a "seldom-used exception to the accepted industry standards," would result in "chaos and inefficiency in Virgin Islands business dealings,"[35] the Court strongly disagrees. The fact that the RESTATEMENT (SECOND) OF TORTS § 417 exception is seldom applied does not undermine the purpose of the principle, and rather reflects its limited application to instances that implicate the paramount public policy of protecting the public from harm. Here, the Court finds that this underlying rationale of the RESTATEMENT (SECOND) OF TORTS § 417 trumps any considerations regarding Defendant's unsupported allegations of "chaos and inefficiency in Virgin Islands business dealings." Second, considering the essential purpose of the Restatements is to consolidate the application of common law principles as reflected in a majority of jurisdictions, and in some instances to advance the law — although that does not appear to be the case here[36]

---

[34] *See supra* at n.28, 29.

[35] Defendant VITELCO's Supplemental Brief In Support of Its Previously Filed Motion for Summary Judgment, Mar. 18, 2014, at page 5.

[36] It is this Court's view that the Supreme Court — as the highest Court in this jurisdiction that "possesses the inherent power to shape the common law in the Virgin Islands," *Banks*, 55 V.I. at 976 — may consider adopting the RESTATEMENT (THIRD) OF TORTS § 64(b) because it appears to reflect a more accurate image of the practical application of the RESTATEMENT (SECOND) OF TORTS § 417. RESTATEMENT (THIRD) § 64(b) provides that "[a]n actor who hires an independent contractor for activity in a public place is subject to vicarious liability for physical harm if the independent contractor's negligence is a factual cause of any such harm within the scope of liability." This revised language removes the distinction between an "unsafe condition" and "negligent activity," because, "although many cases invoking § 417 involve unsafe conditions rather than negligent activity, the cases do not usually turn on this distinction." RESTATEMENT (THIRD) OF TORTS § 64(b) cmt. d. However, despite the Superior Court's concurrent authority to shape the common law in absence of binding precedent to the contrary, the Superior Court is hesitant to adopt the Restatement (Third) of Torts here because it appears few Courts have explicitly considered the adoption of the RESTATEMENT (THIRD) OF TORTS § 64, and the Supreme Court of the Virgin Islands in *Joseph* ex-

116

— the specific language of the RESTATEMENT (SECOND) OF TORTS § 417 is persuasive.[37] Finally, it appears that the Supreme Court of the Virgin Islands' *dicta* in *Joseph* cites favorably to the nondelegable duty exceptions generally as expressed by the RESTATEMENT (SECOND) OF TORTS §§ 410-429.[38] As a result, weighing all the *Banks* factors, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 417 is the soundest rule for this jurisdiction, outweighing the Court's misgivings regarding the first *Banks* factor. In other words, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 417 is a proper reflection of the common law of this jurisdiction.

## II. Applying the RESTATEMENT (SECOND) OF TORTS § 417 to the Present Undisputed Facts

■ Having adopted the RESTATEMENT (SECOND) OF TORTS § 417, the Court now applies it to the present undisputed facts and finds that Plaintiff is entitled to judgment as a matter of law regarding liability. It is undisputed that Defendant VITELCO hired Bonneville to do work in a public place, on the public highways and sidewalks of St. Thomas, "to perform and/or superintend the performance of certain telecom-munications and/or construction work, namely the installation of underground telecommunication fiber optic cable under the direction of VITELCO management," also known as the "HFC Project."[39] Further, the installation of underground or aboveground[40] ·fiber optic cables involves a risk of making the physical condition of the place dangerous for the use of members of the public because it necessitates the physical alteration of public highways and sidewalks. For instance, the work involves digging ditches to install the cable, or, as is the case here,

---

plicitly relies on the RESTATEMENT (SECOND) OF TORTS § 414, an integral part of the collective principles embodied in RESTATEMENT (SECOND) OF TORTS §§ 410-429. Nevertheless, assuming *arguendo* the RESTATEMENT (THIRD) OF TORTS § 64(b) was adopted here, Plaintiff would still be entitled to judgment as a matter of law pursuant to the undisputed facts in this case˙because this case does not turn on the apparent distinction between an "unsafe condition" and "negligent activity."

[37] *See* RESTATEMENT (SECOND) OF TORTS Intro. (1965).

[38] *See Joseph*, 54 V.I. at 665.

[39] Defendant Virgin Islands Telephone Corp.'s Motion for Summary Judgment, Oct. 24, 2013, Exhibit B (Oct. 13, 2011, Agreement between Bonneville and VITELCO).

[40] While the contract specifically enumerates "underground" cable, the language of the contract is broad, such that it also clearly encompasses the installation of "aboveground" cable.

installing heavy overhead cable between utility poles.[41] As a result, Defendant VITELCO has a nondelegable duty to ensure that reasonable precautions are to be taken to protect members of the public using the public highways and sidewalks so that they are protected from the altered conditions of the highways and sidewalks while the work is ongoing. Here, however, Defendant VITELCO concedes that Nolasco, hired by Bonneville to provide labor and materials for the completion of the "HFC Project," was negligent when installing the aboveground cable, causing Plaintiff injuries on May 23, 2012, when one of the cables fell on her head while she was walking past the installation site.[42] Thus, even when drawing all reasonable inferences from the underlying facts in the light most favorable to Defendant VITELCO, the Court finds that no issues of material fact are in dispute and Plaintiff is entitled to judgment as a matter of law as to liability pursuant to RESTATEMENT (SECOND) OF TORTS § 417.

### III. *Banks* Analysis of the RESTATEMENT (SECOND) OF TORTS § 428

■ Applying a *Banks* analysis, the Court also finds that the RESTATEMENT (SECOND) OF TORTS § 428 is an expression of the common law of this jurisdiction and finds it proper to adopt and apply § 428 here. Specifically, RESTATEMENT (SECOND) OF TORTS § 428 provides that:

> An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence

---

[41] Defendant argues that in order to invoke the RESTATEMENT (SECOND) OF TORTS § 417, the Plaintiff must show a 'peculiar risk' pursuant to the RESTATEMENT (THIRD) OF TORTS § 59. First, the Court finds a plain language reading of the standard enumerated in the RESTATEMENT (SECOND) OF TORTS § 417 to be straightforward. Thus, it is unnecessary to look to persuasive sources that may elaborate on what constitutes a "risk of making the physical condition of the place dangerous for the use of members of public." Second, even assuming *arguendo* that the Court adopted Defendant's standard — that "an activity poses a peculiar risk when, if reasonable care is not taken, the resulting risk differs from the types of risk that are usual in the community," RESTATEMENT (THIRD) OF TORTS § 59 cmt. b — the installation of cables above public sidewalks clearly falls into this category because falling cables are not a "usual" risk to the community.

[42] Similarly to the approach taken by the RESTATEMENT (THIRD) OF TORTS § 64(b), we do not attempt to distinguish between a dangerous condition and dangerous activity. Similarly to the Supreme Court of New York's approach in *Tytell v. Battery Beer Distrib., Inc.*, 608 N.Y.S.2d at 226, the Court finds that a dangerous condition and an *activity* that creates a dangerous condition are indistinguishable for the purposes of RESTATEMENT (SECOND) OF TORTS § 417.

of a contractor employed to do work in carrying on the activity.

The *Banks* analysis regarding the RESTATEMENT (SECOND) OF TORTS § 428 is more straightforward than that regarding the RESTATEMENT (SECOND) OF TORTS § 417 because, here, each factor weighs in favor of adopting the RESTATEMENT (SECOND) OF TORTS § 428 as a reflection of the common law of this jurisdiction. Specifically, under the first *Banks* factor, the District Court of the Virgin Islands has explicitly applied the RESTATEMENT (SECOND) OF TORTS § 428 in *Roberts v. Gonzalez*,[43] Under the second *Banks* factor, a review of the case citations listed in the RESTATEMENT (SECOND) OF TORTS § 428 suggests that a majority of jurisdictions have adopted a rule similar to the RESTATEMENT (SECOND) OF TORTS § 428.[44] Plaintiff also persuasively cites to several additional decisions that reflect a widespread adoption of the RESTATEMENT (SECOND) OF TORTS § 428, including cases in Alabama,[45] California,[46] Florida,[47] Illinois,[48] Massachusetts,[49] Missouri,[50] New Jersey,[51] and Oklahoma.[52]

---

[43] 495 F. Supp. 1310, 17 V.I. 571, 580 (D.V.I. 1980).

[44] RESTATEMENT (SECOND) OF TORTS § 428 (collecting cases).

[45] *See Ex parte Hicks*, 537 So. 2d 486, 489 (Ala. 1988) (relying on a common law principle that limits francise liability to "motor carriers," but citing to the RESTATEMENT (SECOND) OF TORTS § 428 as persuasive authority).

[46] *See Serna v. Pettey Leach Trucking, Inc.*, 110 Cal. App. 4th 1475, 2 Cal. Rptr. 3d 835 (2003) (discussing in detail the evolution of the nondelegable duty principle embodied in the RESTATEMENT (SECOND) OF TORTS § 428 in California).

[47] *See Hamid v. Metro Limo, Inc.*, 619 So. 2d 321, 322 (Fla. Dist. Ct. App. 1993) ("A common carrier of passengers cannot, *without specific legislative authority*, relieve itself from liability for violation of a contract or its general duty to the public, or for torts, by means of a lease or other contract for the operation of its facilities by another company.") (emphasis added) (internal citations omitted).

[48] *See Reith v. Gen. Tel. Co. of Illinois*, 22 Ill. App. 3d 337, 341, 317 N.E.2d 369, 373 (1974) ("The defendant[, a telephone company,] had an affirmative, non-delegable duty to take precautions against the possible and probable injuries around an excavation site constructed through its franchise or permission obtained from the state and local authority. This duty, being non-delegable, remains on the defendant irrespective of a contract . . .").

[49] *See Barry v. Keeler*, 322 Mass. 114, 127, 76 N.E.2d 158, 164 (1947).

[50] *See Williamson v. Sw. Bell Tel. Co.*, 265 S.W.2d 354, 357 (Mo. 1954).

[51] *See Felbrant v. Able*, 80 N.J. Super. 587, 594, 194 A.2d 491, 495 (App. Div. 1963) (distinguishing between circumstances that were "disassociated" and associated with (or within the scope of) "the field controlled" by the franchise agreement).

[52] *See Bouziden v. Alfalfa Elec. Co-op., Inc.*, 2000 OK 50, 16 P.3d 450, 455-56 (recognizing RESTATEMENT (SECOND) OF TORTS § 428, but also discussing the "inherently dangerous activities" standard).

Finally, under the third *Banks* factor, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 428 is the soundest rule for the Virgin Islands. First, similar to the public policy rationale of the RESTATEMENT (SECOND) OF TORTS § 417, the underlying purpose of the RESTATEMENT (SECOND) OF TORTS § 428 is to protect the public from harm where an individual or corporation is granted the privilege by a public authority to perform certain work under a franchise agreement. Thus, it is "considered contrary to public policy to permit one engaged in such an activity to delegate his responsibility to others."[53] As the California Court of Appeals explains in *Serna v. Pettey Leach Trucking, Inc.*:[54]

> [w]ere the rule otherwise, a carrier could escape liability for the negligence of its independent contractors, thus reducing the incentive for careful supervision and depriving those who are injured of the financial responsibility of those to whom the privilege was granted. For these reasons, the carrier's duties are nondelegable, and it is only when the carrier is "not regulated" *at all* that the rule is otherwise.

Second, as previously discussed, the RESTATEMENT (SECOND) OF TORTS § 428 has been adopted in this jurisdiction as well as in a majority of jurisdictions, reflecting the longstanding common law nondelegable duty held by certain franchise holders. As a result, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 428 is the soundest rule for this jurisdiction, and, considering all the *Banks* factors, a proper reflection of the common law of this jurisdiction.[55]

---

[53] *Barry v. Keeler*, 76 N.E.2d at 164.

[54] Cal. Rptr. 3d 835, 843-44 (2003) (emphasis added).

[55] Similar to the Court's rationale set forth in note 36, it is this Court's view that the Supreme Court may consider adopting the RESTATEMENT (THIRD) OF TORTS § 64(a). The RESTATEMENT (THIRD) OF TORTS § 64(a) provides that "[a]n actor engaged in an activity that can be lawfully carried out only under a franchise granted by public authority is subject to vicarious liability for physical harm when the actor hires an independent contractor to carry out the activity and the independent contractor's negligence is a factual cause of any such harm within the scope of liability." Comparatively, the RESTATEMENT (THIRD) OF TORTS § 64(a) omits the language of the RESTATEMENT (SECOND) OF TORTS § 428 requiring an "unreasonable risk of harm" because it is duplicative of the Restatement provisions outlining the 'peculiar risk' doctrine. In other words, under either the Second or Third Restatement nondelagable duty exceptions, an employer of an independent contractor may be liable where a member of the public is injured by the negligence of the independent contractor who em-

## IV. Applying the RESTATEMENT (SECOND) OF TORTS § 428 to the Present Undisputed Facts

Having adopted the RESTATEMENT (SECOND) OF TORTS § 428, the Court now applies it to the present undisputed facts and finds that Plaintiff is also entitled to judgment as a matter of law regarding liability on this basis.

■■■ As a threshold matter, Defendant VITELCO argues that the RESTATEMENT (SECOND) OF TORTS § 428, particularly in its adoption in *Roberts*, is exclusive to common carriers such as airlines, and therefore, is inapplicable to the facts of this case. The Court disagrees because, while § 428 most often applies to common carriers, it is generally "applicable to *public service corporations* which, as such, are permitted by their franchise to use instrumentalities[56] which are peculiarly dangerous unless carefully operated."[57] It is this Court's view that a public utility — such as a telephone company — may constitute a public service corporation within the meaning of the RESTATEMENT (SECOND) OF TORTS § 428.[58]

■■■ The Court finds that Defendant VITELCO is a public service corporation that is lawfully carrying on an activity under a franchise granted by a public authority subject to both financial regulation and safety regulations. It is undisputed that on October 1, 1959, pursuant to Act No. 317 and Act No. 504, the Third Legislature of the Virgin Islands

---

ployed to complete an activity that poses a 'peculiar risk,' whether or not an activity is conducted within the scope of a public franchise agreement. Instead, the RESTATEMENT (THIRD) OF TORTS § 64(a) appears to take a novel approach by decreasing the burden of proof by omitting the "risk" requirement and requiring only a showing that authority was granted — and thereby a duty was imposed — pursuant to a franchise agreement. Even assuming *arguendo* the RESTATEMENT (THIRD) OF TORTS § 64(a) was adopted here, Plaintiff would still be entitled to judgment as a matter of law pursuant to the undisputed facts in this case because the higher burden is met under the RESTATEMENT (SECOND) OF TORTS § 428. The Court leaves this difficult question to the discretion of the Supreme Court, but highlights that the Second and Third Restatement provisions regarding a contractor's nondelegable duties must be analyzed as a collective scheme which attempts to consolidate the application of these many nuanced and overlapping common law principles.

[56] BLACK'S LAW DICTIONARY, INSTRUMENTALITY (9th ed. 2009) ("A thing used to achieve an end or purpose.").

[57] RESTATEMENT (SECOND) OF TORTS § 428 cmt. a (emphasis added).

[58] *See Reith*, 22 Ill. App. 3d 337, 317 N.E.2d 369, 373 (1974) (recognizing a telephone company, operating under a franchise agreement, as holding a nondelegable duty to the public); *See Williamson* 265 S.W.2d 354.

granted Defendant VITELCO a franchise to "own, build, rebuild, replace, construct, equip, operate and maintain a local, toll, inter-island, interstate and international public telephone system within and throughout the Virgin Islands."[59] The franchise agreement gives Defendant VITELCO a

> perpetual easement . . . to . . . public buildings, bridges and other public property as well as streets, sidewalks, alleys and public roads, making excavations therein and restoring the same, for the purpose of erecting, attaching, maintain and using poles, pole lines, under-ground conduits, manholes, cables, wires and other faculties necessary to the services herein provided for.[60]

Finally, this non-transferable franchise agreement also contemplated the continuation and modernization of the Virgin Islands telecommunications system.[61] As a result, Defendant's contention that the franchise agreement was granted solely to permit the Public Service Commission to adjust VITELCO's rates and require disclosures of the same is inaccurate. The language of the franchise agreement clearly contemplates work that involves construction on portions of public highways, sidewalks, and property, which are also subject to safety regulations, including the Virgin Islands Rules and Regulations 30 § 13-129.[62]

The Court also finds that "build[ing], rebuild[ing], replac[ing], construct[ing], equip[ping], operat[ing] and maintain[ing] a local, toll, inter-island, interstate and international public telephone system,"[63] involves, in some circumstances, an unreasonable risk of harm.[64] The

---

[59] Plaintiff's Reply to VITELCO's Opposition to Cross-Motion for Partial Summary Judgment, Dec. 2, 2013, Exhibit 9, ¶ 1 (Hereinafter "Franchise Agreement").

[60] Franchise Agreement, ¶ 2.

[61] Franchise Agreement, ¶¶ 3, 10; V.I. Rules & Regulations 30 § 13-141.

[62] V.I. Rules & Regulations 30 § 13-129 ("The company shall construct, operate and maintain its lines along or across any public or private way and the equipment used in connection therewith in a reasonably adequate and safe manner . . ."). Further, the V.I. Rules & Regulations 30 § 13-1 specifically states that "[t]elephone public utilities rendering service between points in the United States Virgin Islands are subject to the General Rules and Regulations of the Public Utilities Commission as well as to these Special Regulations."

[63] Franchise Agreement, ¶ 1.

[64] *Compare Bouziden*, 16 P.3d at 458 ("Companies engaged in transmitting electricity are engaged in a business that is inherently dangerous. An electric transmission company, in using an easement or right of way for its poles, wires, and appliances, must use that degree

Roberts Court adopted the RESTATEMENT (SECOND) OF TORTS § 428 comment a's definition of an "unreasonable risk of harm as an activity particularly dangerous unless carefully operated."[65] While the Roberts decision regarding an air taxi services provides an extreme example of a particularly dangerous activity, the Roberts Court also recognized that "carriage of freight on a public highway" is an example that "involves considerable risk to the public specified in § 428."[66] In this case, Defendant VITELCO's task of constructing, updating, and maintaining the telecommunications system on the Virgin Islands, by use of its easement on public highways and streets, and utilizing a variety of machinery, equipment, and vehicles to complete such a task, is analogous to transporting freight by means of large trucks and equipment on public highways. Specifically, Defendant VITELCO's work places considerable risk and danger to the public who are utilizing the highways and sidewalks of the Virgin Islands if their construction, installation, and maintenance of the telecommunications infrastructure is not performed or operated in a safe manner. The facts presented here demonstrate just one example of those risks.

▮ Finally, the Court finds Defendant VITELCO had a nondelagable duty to Plaintiff and is liable pursuant to the RESTATEMENT (SECOND) OF

---

of care, caution and circumspection in keeping with the dangerous character of its business. As a distributor of electricity, AEC has a duty to anticipate and guard against events which may reasonably be expected to occur because of the inherently dangerous nature of the industry. AEC cannot avoid liability for breach of this duty by delegating it to an independent contractor. However, an employer engaged in an inherently dangerous activity is liable only for the risks inherent in the activity itself, which the employer should contemplate at the time of its contract. The employer is not liable when the contractor creates a new risk, not inherent in the work itself and not reasonably contemplated by the employer.") (internal citations omitted) with Williamson 265 S.W.2d 354 at 357 (noting that "it does not follow merely because the corporation is a public utility that all its acts or contracts fall within the category of the nondelegable duties granted by the franchise" and finding that, under Missouri statutory law, the clearing of brush for the installation of telephone lines is not an act that was "carrying out of the franchise function" and thereby is not an act that falls within the category of nondelegable duties).

[65] Roberts, 17 V.I. at 581 (citing RESTATEMENT (SECOND) OF TORTS § 428 cmt. a).

[66] Id.; see, e.g., Ex parte Hicks, 537 So. 2d at 489 (Ala. 1988) (citing Hodges v. Johnson, 52 F. Supp. 488 (W.D.Va.1943)) ("[T]ransportation of freight upon public highways, often by means of large trucks and trailers, is fraught with an enormous danger to the traveling public.").

TORTS § 428[67] because it is undisputed that (1) Defendant VITELCO hired Bonneville to carry out its primary duties under the franchise agreement to build, construct, install, and modernize the Virgin Islands telecommunication system; (2) Bonneville sub-contracted to Nolasco to complete work relating to the building, constructing, installing, and modernizing of the Virgin Islands telecommunication system in accordance with the contract agreement between Defendant VITELCO and Bonneville, all of which was within the scope of Defendant VITELCO's francise agreement; (3) Defendant VITELCO concedes that Nolasco did not exercise proper care when installing the overhead cable by failing to use warning cones and protective safety clips to hold the wire while it was being installed; and (4) as a result of Nolasco's negligence, Plaintiff was injured when a cable fell on her head while she was walking past the installation site. Thus, even when drawing all reasonable inferences from the underlying facts in the light most favorable to Defendant VITELCO, the Court finds that no issues of material fact are in dispute and Plaintiff is entitled to judgment as a matter of law as to liability pursuant to RESTATEMENT (SECOND) OF TORTS § 428.

## CONCLUSION

For the foregoing reasons, the Court will deny Defendant Virgin Islands Telephone Corp.'s October 24, 2013, Motion for Summary Judgment and grant Plaintiff Taynacleone Creque Hodge's November 4, 2013, Cross-Motion for Summary Judgment. An Order consistent with this Opinion shall follow.

---

[67] *See Bouziden*, 16 P.3d at 455-56 ("Duty depends upon the relationship between the parties and the general risks involved in the undertaking; and, whether a defendant stands in such relationship that the law will impose upon the defendant an obligation to the plaintiff is a question of law. Whether a duty is nondelegable is also a matter of law.").